No. 24-10019

# In the United States Court of Appeals for the Eleventh Circuit

MERRITT ISLAND WOODWERX, LLC, *individually and on behalf of all others similarly situated*,

TRUE TOUCH SERVICES, LLC, *individually and on behalf of all others similarly situated*,

*Plaintiffs–Appellants*,

*v.*

SPACE COAST CREDIT UNION,

*Defendant–Appellant.*

Appeal from the U.S. District Court for the Middle District of Florida,
No. 6:23-cv-01066, Hon. Paul G. Byron

## OPENING BRIEF OF THE APPELLANT

Eric T. Werlinger
KATTEN MUCHIN ROSENMAN LLP
1919 Pennsylvania Ave. NW
  Suite 800
Washington, DC 20006
(202) 625-3500
eric.werlinger@katten.com

Stuart M Richter
KATTEN MUCHIN ROSENMAN LLP
2121 Avenue of the Stars
  Suite 1100
Los Angeles, CA 90067
(310) 788-4400
stuart.richter@katten.com

*Counsel for Defendant–Appellant Space Coast Credit Union*

March 27, 2024

No. 24-10019, *Merritt Island Woodwerx, LLC v. Space Coast Credit Union*

## CERTIFICATE OF INTERESTED PERSONS AND
## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1, Defendant-Appellant Space Coast Credit Union, through undersigned counsel, hereby submits the following Certificate of Interested Persons and Corporate Disclosure Statement, and certifies the following:

1.    Space Coast Credit Union is a Florida state-chartered credit union. It has no parent corporation and no publicly held company owns 10% or more of its stock.

2.    The following is a complete list of all trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this particular case or appeal, including subsidiaries, conglomerates, affiliates, parent corporations, and any publicly held corporation that owns 10% or more of the party's stock.

Brotherton, Joshua

Byron, Paul G. (Hon.)

Cohen & Malad, LLP

deBeaubien, Simmons, Knight, Mantzaris & Neal, LLP

Irick, Daniel C. (Hon.)

Jennings, Christopher D.

No. 24-10019, *Merritt Island Woodwerx, LLC v. Space Coast Credit Union*

Katten Muchin Rosenman LLP

La Fornara, Lisa M.

Merritt Island Woodwerx LLC

Neal, Thomas F.

Normand PLLC

Phillips, Jacob L.

Richter, Stuart M.

Space Coast Credit Union

Stranch, VI, J. Gerard

Stranch, Jennings & Garvey, PPLC

The Johnson Firm

Toops, Lynn A.

True Touch Services LLC

Werlinger, Eric T.

Wisler, Delva

*/s/ Stuart M. Richter*
Stuart M. Richter
*Counsel for Appellant*

## STATEMENT REGARDING ORAL ARGUMENT

Space Coast Credit Union respectfully requests oral argument. This appeal involves critical questions of law about when a party to an arbitration agreement may "default" on its rights under the Federal Arbitration Act—*e.g.*, whether a showing of mere negligence (as opposed to an intentional waiver) is sufficient; whether "futility" relieves a non-movant of its burden to prove up "default"; and whether a respondent can lose its right to arbitrate based upon a clear clerical error by a non-exclusive arbitration administrator. Oral argument will assist the panel in resolving these questions, and it will further give the Court an opportunity to ask questions regarding the record in this case.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT .................................................................. C-1

STATEMENT REGARDING ORAL ARGUMENT .............................................i

TABLE OF CITATIONS ......................................................................... iv

JURISDICTIONAL STATEMENT .................................................... ix

INTRODUCTION ....................................................................................1

STATEMENT OF THE ISSUES PRESENTED ....................................................7

STATEMENT OF THE CASE ....................................................................7

      A.    The Parties Agree to Arbitrate ...........................................7

      B.    The AAA Consumer Rules. ...........................................10

      C.    Woodwerx (But Not True Touch) Attempts to Initiate Arbitration, Which the AAA Erroneously Denies. ...................14

      D.    The Proceedings Below ...................................................18

SUMMARY OF ARGUMENT ...............................................................22

STANDARD OF REVIEW .................................................................26

ARGUMENT ......................................................................................28

I.    Plaintiffs' Claims Belong in Arbitration, Not Federal Court. ..............28

      A.    The Parties Have a Valid Arbitration Agreement Under Which Plaintiffs Gave Up Their Right to Sue in Court. ..........................28

      B.    The District Court's Refusal to Enforce the Arbitration Agreement's Terms as Written Is Legal Error. ............................32

II.    This Case Should be Stayed in Favor of Arbitration Under FAA Section 3 ..................................................................................38

A.    "Default" Under FAA Section 3 Requires an Intentional Waiver of Arbitration Rights, Not Mere Negligence in Asserting Those Rights................................................................................38

B.    Plaintiffs Failed to Prove that Space Coast Defaulted as to Woodwerx. .......................................................................43

C.    Plaintiffs Failed to Prove that Space Coast Defaulted as to True Touch.................................................................................50

D.    Plaintiffs Failed to Show a "Default" Even Under a Negligence Standard.............................................................................55

III.    Both Plaintiffs Should Be Ordered to Individual Arbitration Under FAA Section 4. ......................................................................57

A.    Plaintiffs Have Improperly Refused to Arbitrate........................58

B.    Space Coast Is Aggrieved by Plaintiffs' Refusal to Arbitrate. ...60

CONCLUSION ...................................................................................62

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF CITATIONS

## Cases

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. 333 (2011)............................................................26

*Bedgood v. Wyndham Vacation Resorts, Inc.*,
   595 F. Supp. 3d 1195 (M.D. Fla. 2022) .................................2, 34, 53

*\*Bedgood v. Wyndham Vacation Resorts, Inc.*,
   88 F.4th 1355 (11th Cir. 2023)...................... 3, 5, 30, 35, 44, 48, 49, 53, 54, 57

*Breadeaux's Pisa, LLC v. Beckman Bros.*,
   83 F.4th 1113 (8th Cir. 2023)............................................39

*Brown v. ITT Consumer Fin. Corp.*,
   211 F.3d 1217 (11th Cir. 2000).........................................31

*Chassen v. Fid. Nat'l Fin., Inc.*,
   836 F.3d 291 (3d Cir. 2016) .............................................54

*Cheney v. Anchor Glass Container Corp.*,
   71 F.3d 848 (11th Cir. 1996).............................................42

*Consol. Res. Healthcare Fund I, Ltd. v. Fenelus*,
   853 So. 2d 500 (Fla. 4th DCA 2003).................................4, 35

*Doctor's Assocs., Inc. v. Distajo*,
   66 F.3d 438 (2d Cir. 1995) ...............................................39

*Equity Lifestyle Properties, Inc. v. Fla. Mowing And Landscape
   Serv., Inc.*,
   556 F.3d 1232 (11th Cir. 2009).........................................33

*Figueredo-Chavez v. RCI Hosp. Holdings, Inc.*,
   574 F. Supp. 3d 1167 (S.D. Fla. 2021) ...............................37

*Freeman v. SmartPay Leasing, LLC*,
   771 F. App'x 926 (11th Cir. 2019) ....................................39

*Garcia v. Wachovia Corp.*,
    699 F.3d 1273 (11th Cir. 2012) ........................................................ 54

*Gianelli Money Purchase Plan & Tr. v. ADM Inv. Servs., Inc.*,
    146 F.3d 1309 (11th Cir. 1998) ........................................................ 27

*Gutierrez v. Wells Fargo Bank, NA*,
    889 F.3d 1230 (11th Cir. 2018) ........................................................ 44

*Hearn v. Comcast Cable Commc'ns, LLC*,
    992 F.3d 1209 (11th Cir. 2021) ........................................................ 28

*Hernandez v. Acosta Tractors Inc.*,
    898 F.3d 1301 (11th Cir. 2018) ........................................................ 38

*Hernandez v. MicroBilt Corp.*,
    88 F.4th 215 (3d Cir. 2023) ........................................................ 37

*In re Checking Acct. Overdraft Litig.*,
    754 F.3d 1290 (11th Cir. 2014) ........................................................ 42

*In re Standard Jury Instructions--Cont. & Bus. Cases*,
    116 So. 3d 284 (Fla. 2013) ........................................................ 34

*\*Ivax Corp. v. B. Braun of Am., Inc.*,
    286 F.3d 1309 (11th Cir. 2002) ...................................... 4, 5, 38, 39

*\*Jones v. Waffle House, Inc.*,
    866 F.3d 1257 (11th Cir. 2017) ...................................... 26, 29, 43

*Kaspers v. Comcast Corp.*,
    631 F. App'x 779 (11th Cir. 2015) ...................................... 31, 48

*Krinsk v. SunTrust Banks, Inc.*,
    654 F.3d 1194 (11th Cir. 2011) ........................................................ 44

*Lambert v. Austin Ind.*,
    544 F.3d 1192 (11th Cir. 2008) ........................................................ 28

*Marie v. Allied Home Mortg. Corp.*,
    402 F.3d 1 (1st Cir. 2005) ........................................................ 39

*Mason v. Coastal Credit, LLC,*
No. 3:18-CV-835-J-39MCR, 2018 WL 6620684 (M.D. Fla. Nov.
16, 2018) ............................................................................................37

*Miller v. Drexel Burnham Lambert, Inc.,*
791 F.2d 850 (11th Cir. 1986) ..........................................................53

*\*Morewitz v. W. of England Ship Owners Mut. Prot. & Indem. Ass'n
(Luxembourg),*
62 F.3d 1356 (11th Cir. 1995) .....................................................38, 44

*\*Morgan v. Sundance, Inc.,*
596 U.S. 411 (2022) ...............................................................41, 42, 45

*Morrissette-Brown v. Mobile Infirmary Med. Ctr.,*
506 F.3d 1317 (11th Cir. 2007) ........................................................27

*\*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp,*
460 U.S. 1 (1983) ..........................................27, 29, 32, 34, 43

*Multi–Fin. Secs. Corp. v. King,*
386 F.3d 1364 (11th Cir. 2004) ..............................................27, 34, 36

*Parm v. Nat'l Bank of California, N.A.,*
835 F.3d 1331 (11th Cir. 2016) ........................................................37

*Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship,*
507 U.S. 380 (1993) ..........................................................................42

*Pre-Paid Legal Servs., Inc. v. Cahill,*
786 F.3d 1287 (10th Cir. 2015) ........................................................39

*Rent-A-Center, W., Inc. v. Jackson,*
561 U.S. 63 (2010) ............................................................................28

*Sink v. Aden Enterprises, Inc.,*
352 F.3d 1197 (9th Cir. 2003) ..........................................................40

*State Farm Mut. Auto. Ins. Co. v. Spangler,*
64 F.4th 1173 (11th Cir. 2023) ....................................................4, 34

*Thompson v. Ford of Augusta, Inc.,*
  2019 WL 652396 (D. Kan. Feb. 15, 2019) .....................................12

*United States v. Lopez,*
  590 F.3d 1238 (11th Cir. 2009).......................................................52

*Vreeland v. Zupan,*
  906 F.3d 866 (10th Cir. 2018)..........................................................41

*Wheeling Hosp., Inc. v. Health Plan of the Upper Ohio Valley, Inc.,*
  683 F.3d 577 (4th Cir. 2012)............................................................39

*Zuckerman Spaeder, LLP v. Auffenberg,*
  646 F.3d 919 (D.C. Cir. 2011).........................................................40

**Federal Statutes**

9 U.S.C. § 2........................................................................................28

*9 U.S.C. § 3 .................. ix, 4, 7, 19, 20, 23, 24, 26, 32, 36-40, 4-44, 50, 52, 53, 56

*9 U.S.C. § 4 ...................................................... ix, 6, 7, 20, 26, 32, 37, 38, 57, 60

9 U.S.C. § 16(a)(1) ......................................................................... ix

28 U.S.C. § 1332(d)(2)..................................................................... ix

**Rules**

AAA Consumer Rule 1(c) .................................................................13

AAA Consumer Rule 1(d) .............................................13, 30, 32, 33

*AAA Consumer Rule 12 ..................1, 5, 7, 10-14, 19, 20, 24, 47, 48, 50, 55, 58

**Dictionaries**

Black's Law Dictionary (11th ed. 2019)..............................................41

New Oxford American Dictionary (3d ed. 2010) .............................30

*Merriam-Webster.com Dictionary ...................................................29

**Other Authorities**

*AAA Consumer Arbitration: A Step-by-Step Guide*, PRACTICAL LAW
    ARBITRATION, available at
    https://us.practicallaw.thomsonreuters.com/w-001-0282
    (last visited Mar. 24, 2024)) ............................................................12

AAA Expedited Review Letter
    https://defendstudents.org/cases/lambda-school/nye-v-
    lambda/document/AAA-Letter-to-Lambda-June-7-2021.pdf ...........12, 13

*AAA to Require Arbitration Clause Registration as Part of Revamped
    Consumer Rules*, JD SUPRA (Jul. 11, 2014)
    https://www.jdsupra.com/legalnews/aaa-to-require-
    arbitration-clause-regist-86350/ (last visited Mar. 22, 2024) ....................12

Consumer Clause Registry Home Page, AMERICAN ARBITRATION
    ASSOCIATION,
    https://apps.adr.org/ClauseRegistryUI/faces/org/adr/ext
    apps/clauseregistry/view/pages/clauseRegistry.jsf ........15, 16, 46, 49, 51

*New AAA Rules Mandate Arbitration Clause Registry*, CONSUMER
    FINANCIAL SERVICE LAW REPORT, 18 No. 7 CFSLR 26 (West
    Aug. 8, 2014) .................................................................................12

## JURISDICTIONAL STATEMENT

The district court had jurisdiction over Plaintiffs' suit pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because the matter in controversy allegedly exceeds $5,000,000, exclusive of interest and costs, and is a class action in which at least one member of the class is a citizen of a state different from Space Coast and the number of members of the proposed class exceeds 100 members. This appeal arises from an interlocutory order denying a motion to compel arbitration pursuant to Sections 3 and 4 of the Federal Arbitration Act. 9 U.S.C. §§ 3-4. The district court denied Space Coast's motion to compel arbitration on December 15, 2023, Dkt.49, and Space Coast filed a timely notice of appeal on December 30, 2023, Dkt.50. This Court has appellate jurisdiction pursuant Section 16 of the FAA. 9 U.S.C. § 16(a)(1).

## INTRODUCTION

Merritt Island Woodwerx LLC and True Touch Services LLC have concededly valid arbitration agreements with Space Coast Credit Union that cover the breach-of-contract claims they assert against the credit union. Yet they insist they are entitled to maintain a class-action lawsuit in federal court. About a month-and-a-half before Plaintiffs filed suit, the AAA declined a demand submitted by Woodwerx due to a clerical error (in Space Coast's view, the AAA's error). The error was resolved in due course. The AAA's doors have been open to Plaintiffs since summer 2023. Separately, many substitute arbitral forums—which Plaintiffs were required to use under the arbitration agreement—have always been available. Nevertheless, *both* Plaintiffs view the initial denial of Woodwerx's demand as a get-out-of-arbitration-free card.

They are wrong. Focusing first on Woodwerx, it abandoned efforts to arbitrate prematurely. The AAA refused its demand because Space Coast had not pre-registered the arbitration clause. This was a fixable problem. The plain text of AAA Consumer Rule 12 doesn't mandate pre-registration. The AAA gives respondents an opportunity for expedited review upon the filing of a demand, which it indisputably did ***not*** provide to Space Coast here.

1

Recognizing that mistakes happen, the AAA explicitly invited the parties to reach out if they believed the disposition was in error. Space Coast did so immediately. And, though the AAA never responded to Space Coast's outreach, the credit union solved the problem on its own. Long before Space Coast moved to compel arbitration, the AAA was ready to accept Woodwerx's claim. Moreover, the arbitration agreement obligated Woodwerx to consult with Space Coast to pick a substitute arbitration forum if the AAA was "unavailable"—which, by the plain meaning of the word, it temporarily was. Put simply Woodwerx had multiple, mandatory routes to arbitration it was required to take.

As for True Touch, it never tried to arbitrate. Nor has it ever argued (or proved) it abandoned a previously formed intent to arbitrate because Space Coast's arbitration clause was not pre-registered. True Touch came running directly into federal court. By the time Space Coast demanded arbitration, the AAA was ready to accept True Touch's demand. Sending True Touch to arbitration should have been an easy call.

But the district court allowed both Plaintiffs to remain in federal court. Relying upon its now-partially-vacated decision in *Bedgood v. Wyndham Vacation Resorts, Inc.*, 595 F. Supp. 3d 1195 (M.D. Fla. 2022) (*Bedgood I*), *vacated*

*in part*, 88 F.4th 1355 (11th Cir. 2023) (*Bedgood II*), the district court concluded that the AAA's initial denial of Woodwerx's claim doomed Space Coast's attempts to compel Woodwerx or True Touch to arbitration. The district court reached this conclusion by dismissing the unambiguous terms of the parties' arbitration agreement, failing to apply long-settled circuit precedent on the Federal Arbitration Act, and ignoring the undisputed evidence submitted by Space Coast (and the lack thereof submitted by Plaintiffs). These errors necessitate reversal.

First, the district court concluded Plaintiffs had an affirmative right to go to court under the arbitration agreement, pointing to language in the AAA's denial letter stating Woodwerx "may choose to submit its dispute to the appropriate court for resolution." This conclusion ignores the arbitration agreement's plain text. Plaintiffs gave up their right to sue if either party elected to arbitrate; they agreed to pick a substitute arbitral forum if the AAA is "unavailable"; and—critically—they agreed that the terms of arbitration agreement would control over the AAA's rules in the event of a conflict.

To avoid the conflict between the agreement and the AAA rules, the district court impermissibly narrowed the substitute-forum clause and simply refused to enforce the promise not to go to court. It re-defined the

3

word "unavailable" to carry an arbitration-specific meaning: an arbitration forum is "unavailable" only if the forum no longer exists or does not hear private disputes. But the district court's arbitration-specific definition of "unavailable" flouts bedrock Florida contract law. Undefined terms are given their plain meaning, as would be understood by a person on the street. *State Farm Mut. Auto. Ins. Co. v. Spangler*, 64 F.4th 1173, 1179 (11th Cir. 2023). Worse still, the district court wrote off the parties' unqualified promise not to sue as "standard boilerplate." But "boilerplate" terms are nonetheless valid and enforceable under Florida contract law. *Consol. Res. Healthcare Fund I, Ltd. v. Fenelus*, 853 So. 2d 500, 504 (Fla. 4th DCA 2003). Read as a whole, both parties agreed to arbitrate with Space Coast—even if that meant looking for a forum other than the AAA to do it.

Because it had a binding agreement to arbitrate with Plaintiffs, Space Coast was entitled to a stay under Section 3 of the FAA. But, pointing chiefly to Space Coast's purported negligence in failing to pre-register its arbitration clause, the district court further held the credit union in "default" under the statute as to both Woodwerx *and* True Touch. This is wrong. Under settled circuit precedent, "default" under Section 3 requires proof of "waiver"—the intentional abandonment of arbitration rights. *Ivax Corp. v. B. Braun of Am.,*

4

*Inc.*, 286 F.3d 1309, 1315 & n.17 (11th Cir. 2002). Plaintiffs came nowhere close to carrying their heavy burden to show waiver. Indeed, they submitted no evidence of intentionality *at all*. Yet the district court, in a single paragraph of analysis, deemed Space Coast to have acted intentionally as to Woodwerx. The district court gave True Touch the benefit of this finding because it supposedly would have been "futile" for True Touch to pursue arbitration.

This is wrong. Space Coast did not pre-register its clause because the plain text of Rule 12 (or at least a good-faith reading thereof) says it didn't need to until a demand is filed. The credit union was entitled to an opportunity for expedited review. Further, Space Coast took immediate action in response to the AAA's denial of Woodwerx's claim, doing exactly what the AAA told it to do if it thought the arbitration had been declined "in error." The "error" was resolved, and the AAA was available to Plaintiffs before Space Coast responded to the complaint. These key facts—that the issue with the AAA was curable and Space Coast took immediate, undisputed action to cure it—distinguishes this appeal from *Bedgood II*. Finally, perceived "futility" cannot relieve True Touch of its burden to prove waiver by Space Coast. There's not shred of precedent (or even a good argument) to support "futility" as a basis to relieve True Touch of its burden

to prove waiver. And that's particularly true here, given that True Touch submitted no evidence manifesting an intent to arbitrate before Space Coast cured the problems with AAA, let alone before Space Coast demanded arbitration.

For similar reasons, Space Coast was also entitled to an affirmative order that the parties to proceed to arbitration under Section 4 of the FAA. Both Plaintiffs failed to honor the terms of the parties' arbitration agreement, and Space Coast was aggrieved by that failure. The district court's holding to the contrary is premised on the same errors noted above—in particular, the supposition that *both* Plaintiffs satisfied their obligations under the agreement based on nothing more than Woodwerx's initial arbitration demand.

As explained in detail below, the district court's decision should be reversed, and this case should be remanded with instructions either to stay this case or to issue an affirmative order that Plaintiffs must proceed to individual arbitration. Alternatively, if the Court believes Space Coast has defaulted or otherwise given up its arbitration rights as to Woodwerx, it should at least reverse and remand as to True Touch.

6

## STATEMENT OF THE ISSUES PRESENTED

1.    Did the AAA's initial denial of Woodwerx's demand vitiate both Plaintiffs' contractual promises not to sue and to seek individual arbitration?

2.    Did Space Coast "default" on its arbitration rights under Section 3 of the FAA as to Woodwerx by failing to pre-register its arbitration clause with the AAA, notwithstanding the right to expedited review under Consumer Rule 12?

3.    Is Space Coast entitled to an affirmative order sending Plaintiffs to arbitration under Section 4 of the FAA?

4.    Does perceived "futility" excuse True Touch from proving waiver of arbitration rights or compliance with its obligations under the arbitration agreement? And did True Touch prove such "futility" if so?

## STATEMENT OF THE CASE

### A.    The Parties Agree to Arbitrate.

Space Coast is a member-owned, not-for-profit credit union headquartered in Melbourne, Florida. Dkt.8 at 2, ¶ 8.[1] Woodwerx and True

---

[1] Citations to "Dkt.XXX" refer to the docket number in the district court. Page references refer to the page number in the header generated by the district court's electronic filing system.

Touch are members of the credit union with business checking accounts. *Id.* ¶¶ 6-7. Woodwerx joined Space Coast in July 2019, and True Touch joined in October 2021. Dkt.25 at 2-3, ¶¶ 4, 9. Woodwerx currently maintains a checking account with the credit union; True Touch abandoned its account with a negative balance, which Space Coast closed in April 2023. *Id.* at 3-4, ¶¶ 7, 11.

Space Coast first promulgated an arbitration clause to its members in December 2019, with an effective date of January 2020. *Id.* at 5-6, ¶¶ 15-16. Both Woodwerx and True Touch are concededly bound by the agreement to arbitrate. Dkt.8 at 9, ¶ 34. Woodwerx received the arbitration agreement as part of a change-in-terms notice delivered with its December 2019 account statement. Dkt.25 at 5-8, ¶¶15-20. Woodwerx had the opportunity to opt out of arbitration, but elected not to do so. *Id.* at 7-8, ¶¶ 20-21. True Touch joined the credit union following the promulgation of the arbitration agreement, so it consented to arbitration by joining Space Coast. *Id.* at 3, ¶ 10.

The arbitration agreement unambiguously states that "any and all Claims that are threatened, made, filed or initiated after" the effective date of the arbitration agreement "shall, at the election of either You or Us, be resolved by binding arbitration." Dkt.8-1 at 10, § 37. Either party "may elect

to resolve a particular Claim through arbitration, even if one of us has already initiated litigation in court related to the Claim." *Id.* Critically, the agreement states in conspicuous all-caps print that, "IF EITHER YOU OR WE ELECT TO RESOLVE A PARTICULAR CLAIM THROUGH ARBITRATION, YOU WILL GIVE UP YOUR RIGHT TO GO TO COURT TO ASSERT OR DEFEND YOUR RIGHTS UNDER THIS ACCOUNT AGREEMENT," save cases filed in small-claims court. *Id.*

Any arbitration initiated under the agreement is to be "administered by the American Arbitration Association ('AAA') in accordance with its applicable rules and procedures for consumer disputes." *Id.* But "[i]f AAA is unavailable to resolve the Claims, and if you and we do not agree on a substitute forum, then you can select the forum for the resolution of the Claims." *Id.* (hereinafter "the substitute-forum clause"). Further, "[i]n the event of a conflict between the [AAA Consumer] Rules and th[e] Arbitration Agreement, th[e] Arbitration Agreement shall supersede the conflicting Rules" to the extent of any inconsistency. *Id.* (hereinafter "the conflicts clause"). When combined with the conspicuous waiver of the right to proceed in court, the upshot of these provisions is clear: The parties must find an available arbitral forum—starting first with AAA—if either side

elects to proceed with arbitration. Any such arbitration must be on an individual basis.[2]

## B.    The AAA Consumer Rules.

The parties' arbitration agreement incorporates the AAA's Consumer Rules. Consumer Rule 12 is most relevant here. It states "a business that provides for or intends to provide for these Rules or another set of AAA Rules in a consumer contract . . . should": (1) "notify the AAA of the existence of such a consumer contract" at least 30 days before the planned effective date" and (2) "provide the AAA a copy of the arbitration agreement." The AAA will then "review the agreement for material compliance with [the AAA's] due process standards" and collect a review fee.

Many businesses overlook the AAA's suggestion that they submit their arbitration clauses for review prior to implementation. (And it is a suggestion: "should", not "must.") That's why the AAA provides

---

[2] The Membership Agreement contains a waiver of the right to participate in a class action. Space Coast reserves its right to assert the class-action waiver against either Plaintiff.

"expedited review" of an arbitration clause upon the filing of an arbitration

demand by a consumer:

> *If a business does not submit its arbitration agreement for review and a consumer arbitration then is filed with the AAA, the AAA will conduct an expedited review at that time*. Along with any other filing fees that are owed for that case, the business also will be responsible for paying the nonrefundable review and Registry fee (including any fee for expedited review at the time of filing) for this initial review, which is detailed in the Costs of Arbitration section found at the end of these Rules.

AAA Consumer Rule 12 (emphasis added). Unlike the first part of Rule 12,

the expedited-review process is mandatory ("will conduct an expedited

review"). Further, this paragraph warns that "[t]he AAA will decline to

administer consumer arbitrations arising out of that arbitration agreement if

the business declines to pay the review and Registry fee." Rule 12 concludes

with the following: "If the AAA declines to administer a case due to the

business's non-compliance with this notification requirement, the *parties*" —

both of them together, not just one of them—"may choose to submit their

dispute to the appropriate court." (Emphasis added.)

Businesses and consumers have relied upon the expedited-review process since it was first promulgated in 2014.[3] Typically, if a provision is not registered prior to the filing of an arbitration demand, the AAA will send a letter informing the business that it "has not previously submitted its consumer arbitration clause for review" and, "[a]s such, the AAA will review the clause for th[e] matter on an expedited basis."[4] The business is then ordinarily given a deadline by which to complete submission and

---

[3] Many legal commentators—both current and contemporaneous with the rule change—interpret Consumer Rule 12 as Space Coast does here. *E.g.*, *AAA Consumer Arbitration: A Step-by-Step Guide*, PRACTICAL LAW ARBITRATION, *available at* https://us.practicallaw.thomsonreuters.com/w-001-0282 (last visited Mar. 24, 2024) ("If the clause is not registered, the AAA conducts an expedited review to determine if it comports with the Consumer Due Process Protocol . . . . The AAA charges a fee for its expedited review of the clause."); *New AAA Rules Mandate Arbitration Clause Registry*, CONSUMER FINANCIAL SERVICE LAW REPORT, 18 No. 7 CFSLR 26 (West Aug. 8, 2014) (same); *AAA to Require Arbitration Clause Registration as Part of Revamped Consumer Rules*, JD Supra (Jul. 11, 2014) https://www.jdsupra.com/legalnews/aaa-to-require-arbitration-clause-regist-86350/ (last visited Mar. 22, 2024) (same).

[4] For an example of the form letter sent to entities that haven't pre-registered their clauses, see https://defendstudents.org/cases/lambda-school/nye-v-lambda/document/AAA-Letter-to-Lambda-June-7-2021.pdf ("AAA Expedited Review Letter"). *See also Thompson v. Ford of Augusta, Inc.*, 2019 WL 652396, at *2 (D. Kan. Feb. 15, 2019) (referencing a similar letter).

payment, and it is only then the AAA warns that "the AAA may decline to administer this dispute if the business does not timely respond."[5]

Consumer Rule 1(d) makes clear that the point of the review process prescribed by Rule 12 is to ensure that arbitration clauses administered by the AAA "meet the due process standards contained in the *Consumer Due Process Protocol and the Consumer Arbitration Rules*." There's no dispute that the parties' agreement here comports with the AAA's due-process protocols, as the Space Coast agreement has been reviewed and accepted by the AAA (more on this in a moment). By default, Consumer Rule 1(d) states that, if the AAA "declines to administer an arbitration" for failure to satisfy due-process protocols, "either party may choose to submit its dispute to the appropriate court for resolution."

Importantly, Consumer Rule 1(c) states that the parties "may agree to change these Rules." The parties did so here through the substitute-forum clause, which states "[i]f AAA is unavailable to resolve the Claims, and if you and we do not agree on a substitute forum, then you can select the forum for the resolution of the Claims." Dkt.8-1 at 10, § 37(a).

---

[5] AAA Expedited Review Letter, *supra* n.4.

### C.    Woodwerx (But Not True Touch) Attempts to Initiate Arbitration, Which the AAA Erroneously Denies.

Woodwerx filed an arbitration demand with the AAA on March 27, 2023. Dkt.26 at 2, ¶ 3; Dkt.8 at 1-2, ¶ 3. Per the plain text and established understanding of Rule 12 discussed above, Space Coast anticipated to receive a letter alerting it to the filing of the demand and inviting the credit union to submit it clause to an expedited review. But that didn't happen. Instead, in late April 2023, Space Coast received a letter from the AAA stating that it declined to administer Woodwerx's demand because Space Coast supposedly failed to comply with the AAA's policies "[p]rior to the filing" of the demand. Dkt.8-3 at 1; Dkt.26 at 2, ¶ 4. Though the letter didn't clearly spell out the AAA's basis for the denial, it was clear enough (and subsequent events would prove) that it was because Space Coast did not pre-register the clause. The AAA advised Space Coast could then "inform[] all parties that Claimant may re-file their claim" after Space Coast came into "compliance," Dkt.8-3 at 2; Dkt.26 at 2, ¶ 4. The letter also stated that "[i]f you believe we have declined this matter in error, please email ConsumerFiling@adr.org." Dkt. 8-3 at 1.

This turn of events shocked Space Coast. As instructed to do by the letter, and just days after receipt, Space Coast's counsel emailed the AAA. Dkt.26 at 3, ¶ 5. Space Coast indicated that it believed the matter had been declined in error and that the credit union wanted to proceed with arbitration. *Id.* It specifically requested more information regarding the AAA's specific bases for administratively closing the case and instructions on how to remedy any non-compliance. *Id.*

Space Coast waited several weeks for a response from the AAA. Per the instructions in the letter, the credit union wanted to proceed through the correct channels and, if possible, obtain expedited registration and review. But the AAA never responded. *Id.* ¶ 6. So Space Coast decided to submit its clause for registration through the ordinary, non-expedited procedure. *Id.* The credit union began this process in early June 2023—***before*** Plaintiffs filed their original complaint (June 7, 2023) and certainly before they requested waiver of service (June 14, 2023). Dkt.13. Indeed, The AAA Consumer Clause Registry indicates that Space Coast is registered with the AAA as of June 7, 2023:



*Consumer Clause Registry Home Page*, AMERICAN ARBITRATION ASSOCIATION,

https://apps.adr.org/ClauseRegistryUI/faces/org/adr/extapps/clauseregistry/view/pages/clauseRegistry.jsf (click "View Registered Consumer Arbitration Clauses," navigate through the next window, and then search for "Space Coast") (hereinafter "Consumer Clause Registry Search Results").

With still no response from the AAA, Space Coast's counsel followed up on June 9, 2023, explaining that Space Coast had submitted its arbitration agreement to the AAA for approval and that Space Coast wished to proceed with arbitration of Woodwerx's demand. Dkt.26 at 3, ¶ 6. Again, Space Coast inexplicably received no response to its email outreach.

The review process with the AAA was not instantaneous. And, due to the AAA's lack of response to the as-instructed email outreach, Space Coast

could not avail itself of expedited review. So it was not until July 24, 2023, that the AAA sent correspondence to Space Coast confirming that the arbitration agreement had been approved and registered with the AAA. Specifically, the AAA stated:

> Based upon the administrative review of the Space Coast Credit Union consumer arbitration clause, under current AAA policy, the AAA is prepared to administer consumer-related disputes filed pursuant to this clause. Space Coast Credit Union and its consumer arbitration clause will be included on the Consumer Clause Registry.

Dkt.26 at 3, ¶ 7.

For the avoidance of doubt, True Touch *never* attempted to initiate arbitration through the AAA. Nor is there any evidence that True Touch desired or intended to arbitrate at any time. The first mention of arbitration between True Touch and Space Coast came from the credit union's lawyers in late July 2023. Counsel for Space Coast informed Plaintiffs' counsel that the issues with the AAA were finally rectified and the AAA was prepared to administer their claims. *Id.* at 3 ¶ 8. Plaintiffs' counsel glibly responded: "too little, too late." *Id.*

17

**D.    The Proceedings Below.**

Plaintiffs filed their original class-action Complaint in the district court on June 7, 2023. Dkt.1. The operative Amended Complaint was filed a couple days later, alleging claims for breach of contract based on Space Coast's assessment of two types of overdraft fees. Dkt.8 at 5, ¶ 17 & 17, ¶ 77. Plaintiffs also claimed in the alternative that Space Coast has been unjustly enriched by the assessment of the fees. *Id.* at 24-25, ¶ 131. Plaintiffs asked counsel for Space Coast to waive service of process and accept the Amended Complaint via email on June 14, 2023, which the credit union agreed to do. Dkt.13 at 1. As just noted, Plaintiffs refused to proceed to arbitration following Space Coast's written demand in July 2023. So Space Coast filed a motion to compel arbitration of Plaintiffs' claims pursuant to Sections 3 and 4 of the FAA. Dkt.24.

The motion asserted that Plaintiffs were bound by the arbitration agreement. *Id.* at 11. Space Coast further argued that at no point did it act inconsistently with an intention to arbitrate. Rather, after the AAA erroneously refused to extend to Space Coast the default expedited-review procedure, the credit union took the necessary steps to ensure that the arbitration forum was available as quickly as possible. It further pointed out

18

that, pursuant to the agreement's plain terms, Woodwerx should have requested a substitute arbitration forum based upon the temporary unavailability of the AAA. *Id.* at 15.

In opposition, Plaintiffs conceded that their arbitration agreements were valid and on point. *See* Dkt.49 at 9. Rather, relying exclusively on the AAA's initial declination to administer Woodwerx's arbitration, they argued that: (1) the parties contracted that, if the AAA declined to administer arbitration, the would-be claimant had the right to sue in court; (2) the AAA's initial refusal to hear Woodwerx's claim did not render it "unavailable" under the arbitration agreement; (3) by neglecting to pre-register its clause before Woodwerx filed a claim, Space Coast waived its right to arbitrate against Woodwerx; and (4) True Touch was excused from proving waiver or otherwise showing compliance with the arbitration clause because it would have been "futile" to try to arbitrate. Dkt.37.

The district court agreed with Plaintiffs. Starting first with the question of whether Space Coast was in "default" under Section 3, the district court determined that Space Coast "failed to perform its contractual obligations under AAA Consumer Rule 12 by neglecting to submit the Arbitration Agreement for pre-dispute review and pay the associated fee." Dkt.49 at 11.

19

Nowhere did the district court address the availability of expedited review under Consumer Rule 12, nor the fact the AAA never allowed Space Coast to avail itself of such review.

Rather, based upon the "neglect" of not pre-registering the clause before Woodwerx filed a claim, the district court found Space Coast in "default" of its arbitration rights under Section 3 and held it "may not issue a stay" as a result. *Id.* Instead of applying this Circuit's well-settled definition of "default," the district court relied upon a legal dictionary to define the term as bare neglect. *Id.* Also, it never performed a separate "default" analysis using facts specific to True Touch. Instead, it held that True Touch got the benefit of its "default" analysis as to Woodwerx because it would have been "futile" for True Touch to seek arbitration. *Id.* at 12 n.2.

The district court further found that it had no authority under Section 4 to issue an affirmative order for the parties to arbitrate because both Plaintiffs complied with their obligations under the arbitration agreement. *Id.* at 12. Indeed, the district court determined that "the terms of the Arbitration Agreement itself require the action to stay in this forum." *Id.* at 13. Pointing again to Consumer Rule 12, the district court said the AAA rules "make[] crystal clear that either party may choose to submit the dispute to

an appropriate court" if the AAA declines to administer a case under the rule. *Id.* at 12-13.

Faced with language in the arbitration agreement that mandated the contrary, the district court narrowed or disregarded three key provisions of the agreement: It concluded the substitute-forum clause did not apply, saying that the AAA would only be "unavailable" under the contract if it no longer existed or did not handle private arbitrations. *Id.* at 15-16. As for the overarching promise not to sue in court, the district court brushed this aside as "standard boilerplate" that need not be enforced in the current circumstances. *Id.* at 14-15. And, having dismissed these key provisions, the district court found no "conflict" that would trigger the agreement's conflicts clause. *Id.* at 13.

Finally, the district court devoted the final page-and-a-half of its order to its finding that Space Coast waived its right to arbitrate. *Id.* at 16-18. Ignoring undisputed evidence about Space Coast's quick and repeated efforts to register its clause in compliance with the AAA's policies, the district court found that "the credit union waited to begin taking those steps until *two days after* Plaintiffs filed this action—which was more than a month since the AAA declined to administer arbitration." *Id.* at 17 (emphasis in

21

original). The district court said this perceived "lackadaisical regard for pursuing arbitration" to be "inconsistent with the greater speed and efficiency that arbitration provides"—which it found to be sufficient for Plaintiffs to establish a knowing and intentional abandonment of rights. *Id.* at 17-18.

## SUMMARY OF ARGUMENT

**I.A.** Both Woodwerx and True Touch admit they have valid and binding arbitration agreements with Space Coast that cover the claims at issue in this action. Though the AAA is the first forum the parties must try, it is not the exclusive forum under which they may arbitrate. If the AAA is "unavailable to resolve the Claims," the parties must find a "substitute forum"—*i.e.*, another place to arbitrate. By the dictionary meaning of the word, the AAA was—at worst—"unavailable" to Woodwerx because it was "unable or unwilling" to hear a Woodwerx's demand. The AAA's erroneous refusal of Woodwerx's claim did not give either Plaintiff license to run into court. Even if the AAA rules arguably permitted it, the parties' arbitration agreement clearly did not. And, in light of the conflicts clause in the arbitration agreement, the terms of the arbitration agreement win out.

**I.B.** The district court's contrary conclusion is premised upon a misconstruction of the parties' agreement that violates federal arbitration law and Florida contract law. It first gave the word "unavailable" a special arbitration-specific definition that is far narrower than the plain, dictionary meaning of the word. But settled FAA precedent says terms in an arbitration agreement must be construed like the terms in any other contract under state law. Florida law says undefined terms must be given their plain meaning. And the plain meaning of "unavailable" is nothing remotely similar to the definition applied by the district court.

The district court further refused to give full meaning to the parties' agreement not to go to court, dismissing it as "standard boilerplate." But, "boilerplate" or not, it was a plain contract term that is clearly enforceable under Florida law. To the extent the district court (incorrectly) thought Space Coast did not move diligently to facilitate arbitration following the AAA's denial of Woodwerx's claim, that's not an excuse to ignore a plain contractual promise. Rather, it is a factor to consider as part of the court's analysis under Sections 3 and 4 of the FAA.

**II.A.** Because Space Coast has a binding, on-point arbitration agreement with Plaintiffs, it was entitled to a stay under Section 3 of the

FAA. To avoid a stay, Plaintiffs had to carry the "heavy" burden of showing that the credit union "defaulted" on its rights—*i.e.*, that it waived or intentionally abandoned the right to arbitrate. Here, the district court significantly lightened Plaintiffs' load by holding them only to a negligence standard. This was plain legal error that renders all but one paragraph of the district court's Section 3 analysis subject to immediate reversal.

**II.B.** Under the correct standard, Woodwerx came nowhere close to carrying its heavy burden. The district court found that Space Coast waived its rights as to Woodwerx because: (1) it failed to take the "necessary" of pre-registering the arbitration agreement with the AAA, and (2) it allegedly did not correct the issues with the AAA until two days after Plaintiffs filed this action. Both points are clearly wrong. Consumer Rule 12, by its plain text, does not require pre-registration. At a bare minimum, Space Coast's understanding of the rule is reasonable and any purported noncompliance does not evidence intentionality. Moreover, Space Coast *immediately* moved to correct the AAA's errors by emailing the AAA as it was instructed to do. When the AAA failed to respond, Space Coast took further initiative by registering the arbitration clause on its own through the non-expedited pathway. This evidence is clear and undisputed; the district court simply

24

ignored the evidence and came to a conclusion that is devoid of support in the record.

**II.C.** As for True Touch, there is no evidence of intentionality at all. It never sought arbitration. Nor did it submit any evidence that it was dissuaded from seeking arbitration prior to Space Coast demanding it in July 2023. Nevertheless, the district court excused True Touch from proving waiver under a theory of "futility"—*i.e.*, the AAA would have rejected a demand had one been submitted. That finding is legally and factually wrong. Legally, there is no basis in precedent or good reason suggesting that "futility" may excuse a non-movant from demonstrating a waiver of arbitration rights. Factually, True Touch simply did not try to establish a factual predicate for futility.

**II.D.** Even under a negligence standard, Plaintiffs failed to carry their burden to demonstrate a "default" of rights by Space Coast. The entire narrative is predicated upon the assertion that Space Coast was required to pre-register its clause with the AAA prior to either plaintiff submitting a demand. That is wrong—or, at very least, Space Coast's contrary understanding was perfectly reasonable.

**III**. Finally, Space Coast was entitled to an affirmative order directing Plaintiffs to arbitration under Section 4 of the FAA. Both Plaintiffs plainly failed to uphold their rights under the arbitration agreement by filing this lawsuit and ignoring their obligations to arbitrate. And the credit union is clearly aggrieved by that failure. The district court's contrary reasoning is predicated upon the same errors that drove its erroneous denial of a stay under Section 3.

## STANDARD OF REVIEW

The Court reviews *de novo* "both the district court's denial of a motion to compel arbitration," and "the district court's interpretation of an arbitration clause." *Jones v. Waffle House, Inc.*, 866 F.3d 1257, 1263 (11th Cir. 2017). It is "basic hornbook law" that the FAA "reflects 'both a liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract.'" *Id.* at 1263-64 (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)). Under this standard, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to

26

arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

Factual findings made by the district court must be reviewed for clear error. *Multi–Fin. Secs. Corp. v. King*, 386 F.3d 1364, 1366 (11th Cir. 2004). "A factual finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Morrissette-Brown v. Mobile Infirmary Med. Ctr.*, 506 F.3d 1317, 1319 (11th Cir. 2007) (internal citation and quotation marks omitted). Though this is a deferential standard, it is not toothless. Particularly in instances when the appellee had the burden of persuasion of below, this Court has found fact finding to be clearly erroneous when the district court "has not pointed to any evidence" that would support its order. *Gianelli Money Purchase Plan & Tr. v. ADM Inv. Servs., Inc.*, 146 F.3d 1309, 1313 (11th Cir. 1998).

27

## ARGUMENT

## I.    PLAINTIFFS' CLAIMS BELONG IN ARBITRATION, NOT FEDERAL COURT.

### A.    The Parties Have a Valid Arbitration Agreement Under Which Plaintiffs Gave Up Their Right to Sue in Court.

The FAA provides that a written agreement in any contract to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Put differently, "[t]he FAA [ ] places arbitration agreements on an equal footing with other contracts and requires courts to enforce them according to their terms." *Hearn v. Comcast Cable Commc'ns, LLC*, 992 F.3d 1209, 1213 (11th Cir. 2021) (quoting *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010)) (internal citation and quotation marks omitted).

A court must "either stay or dismiss a lawsuit and [] compel arbitration upon a showing that (a) the plaintiff entered into a written arbitration agreement that is enforceable 'under ordinary state-law' contract principles and (b) the claims before the court fall within the scope of that agreement." *Lambert v. Austin Ind.*, 544 F.3d 1192, 1195 (11th Cir. 2008) (citation omitted). Standard rules of contract interpretation apply to arbitration clauses—with "any doubts," including those related to "the

construction of the contract language itself," "resolved in favor of arbitration." *Jones*, 866 F.3d at 1264 (quoting *Moses H. Cone Mem'l Hosp*, 460 U.S. at 24-25).

Here, there's no question that the parties have a binding, on-point arbitration agreement. Plaintiffs concede as much. Dkt.8 at 9, ¶ 34; Dkt.37 at 4-5. The district court agreed. Dkt.49 at 9 ("Both parties agree that a valid Arbitration Agreement includes Plaintiffs' claims within its scope."). In an all-caps promise prominently displayed in their arbitration agreements, both Plaintiffs gave up their rights to sue in court if either they or Space Coast elected to proceed through arbitration. Dkt.8-1 at 10, § 37. Space Coast has demanded that both individually arbitrate their claims, as they promised to do.

The AAA is the first—but not exclusive—arbitral forum under the parties' agreement. *Id.* The parties agreed that, if the AAA is "unavailable to resolve the Claims," the parties must find a "substitute forum"—*i.e.*, another place to arbitrate, given their agreement not to go to court. *Id.*, § 37a. By the plain meaning of the word, the AAA is "unavailable" if it is "unable or unwilling" to hear a claim for whatever reason. *Unavailable*, *Merriam-Webster.com Dictionary*, MERRIAM-WEBSTER, https://www.

29

merriam-webster.com/dictionary/unavailable (last accessed March 21, 2024); *see also Unavailable*, NEW OXFORD AMERICAN DICTIONARY (3d ed. 2010) ("not able to be used or obtained; not at someone's disposal").

To the extent the AAA initially refused to hear Woodwerx arbitration demand, it was—at worst—"unavailable" for Woodwerx's claim. Under the terms of the arbitration agreement, Woodwerx was obligated to confer with Space Coast to pick another arbitral forum. True, the AAA's denial letter told Woodwerx that it "may choose to submit its dispute to the appropriate court for resolution," citing Consumer Rule 1(d). But, notwithstanding the mystifying reference to Consumer Rule 1(d),[6] the AAA's statement intractably conflicts with the substitute-forum clause. It thus runs headlong into the arbitration agreement's conflict clause: "In the event of a conflict between the [AAA Consumer] Rules and th[e] Arbitration Agreement, th[e] Arbitration Agreement shall supersede the conflicting Rules . . . ." Dkt.8-1 at 10, § 37a.

---

[6] As explained above, *supra* p. 13, this provision allows the AAA to decline claims under arbitration clauses that flunk the AAA's due-process protocols. *See also Bedgood II*, 88 F.4th at 1364-65. But that's clearly not at issue here. The AAA subsequently accepted the parties' arbitration clause. Dkt.26 at 3, ¶ 7.

Significantly, neither Woodwerx nor True Touch has ever argued (much less proved) that the choice of the AAA as the first-choice arbitral forum "is an integral part of the agreement to arbitrate," such that its temporary "failure" must "preclude arbitration." *Brown v. ITT Consumer Fin. Corp.*, 211 F.3d 1217, 1222 (11th Cir. 2000). They can't, as the substitute-forum clause would torpedo that argument. Indeed, this Court, in an unpublished but nonetheless on point decision, previously noted that the "AAA's refusal to arbitrate claims . . . does not render the arbitration provision invalid" when the parties have "agreed to certain procedures for the appointment of a substitute arbitrator." *Kaspers v. Comcast Corp.*, 631 F. App'x 779, 783 (11th Cir. 2015). In such circumstances, "the choice of AAA as a forum was not integral to the agreement." *Id.* So too here. Woodwerx could have found another arbitrator if it didn't want to wait for the issues with the AAA to be cleared up. Likewise, Woodwerx never argued (much less proved) that substitute arbitrators were unavailable. Woodwerx simply ignored the substitute-forum clause, and True Touch never tried to arbitrate to begin with.

Put simply, both Woodwerx and True Touch refused to abide by the terms of their arbitration agreements with Space Coast. Space Coast is

31

therefore entitled to either an order to stay this case so that each Plaintiff may proceed to arbitration, *infra* Pt. II, or an affirmative order that each of them engage in individual arbitrations, *infra* Pt. III. *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 22. ("The [FAA] provides two parallel devices for enforcing an arbitration agreement: a stay of litigation in any case raising a dispute referable to arbitration, [] § 3, and an affirmative order to engage in arbitration, § 4.").

### B. The District Court's Refusal to Enforce the Arbitration Agreement's Terms as Written Is Legal Error.

Below, Plaintiffs tried to sidestep Sections 3 and 4 of the FAA altogether by arguing that the parties' agreement affirmatively allowed them to file their claims in federal court. Dkt.37 at 8-9. The district court seemingly credited this position. Dkt.49 at 12-15. As Plaintiffs' argument goes, Consumer Rule 1(d) functions like a contract term because the arbitration agreement incorporates the AAA Consumer Rules; Consumer Rule 1(d) states that "either party may choose to submit its dispute to the appropriate court for resolution" if the AAA declines an arbitration under the rule; and the April 2023 letter invoked Consumer Rule 1(d) and said Woodwerx may

go to court. Ergo, Plaintiffs' say, both Woodwerx *and* True Touch may sue, per the terms of the agreement. Dkt.37 at 8-9.

This argument fails as a matter of law because it only makes sense if one ignores the substitute-forum and conflicts clauses altogether. It is 1L contract law that an agreement must be read as a whole, with meaning given to every term. *Equity Lifestyle Properties, Inc. v. Fla. Mowing And Landscape Serv., Inc.*, 556 F.3d 1232, 1242 (11th Cir. 2009) (recognizing that, under Florida law, the Court "must read the contract to give meaning to each and every word it contains" and "avoid treating a word as redundant or mere surplusage") (citation omitted). The substitute-forum and conflicts clause provisions are squarely on point as to Woodwerx for the reasons just discussed. And as to True Touch, there's no argument to begin with: True Touch has never demanded arbitration through the AAA; the AAA has never invoked Consumer Rule 1(d) as to True Touch; and True Touch has never argued (must less offered evidence) that it was dissuaded from doing so prior to filing suit. *See infra* § II.C.

Knowing these provisions are fatal to its position, Woodwerx argued below that "unavailable" has a special meaning in the context of an arbitration agreement. Dkt.37 at 13-14. Pointing to the district court's vacated

33

decision in *Bedgood*, Woodwerx argued that the AAA is only "unavailable" when "it no longer exists or does not even handle private arbitrations." *Id.* at 12-13 (quoting *Bedgood I*, 595 F. Supp 3d at 1302 n.12). The district court agreed and alternatively found that the word is at least ambiguous.[7]

This is wrong. Words in an arbitration agreement are construed just like the words in any contract. *Multi-Fin. Sec. Corp*, 386 F.3d at 1367 (holding that "the Court must interpret [an arbitration agreement] as it would a contract under the applicable state law"). There's no special, arbitration-specific definition of a "unavailable." Under Florida contract law, an "undefined term" is given "its plain meaning as understood by the person-on-the-street, that is, the term's plain and ordinary meaning." *State Farm Mut. Auto. Ins. Co.*, 64 F.4th at 1179 (cleaned up). To ascertain a word's plain and ordinary meaning "courts may look to legal and nonlegal dictionary

---

[7] The district court also held this supposed ambiguity must immediately be construed against Space Coast. Dkt.49 at 16. Though beside the point (there is no ambiguity), here too the district court is wrong. Two times over, in fact. *First*, it is settled Florida contract law that the doctrine of *contra proferentem* is a canon of last resort. *E.g.*, *In re Standard Jury Instructions--Cont. & Bus. Cases*, 116 So. 3d 284, 318 (Fla. 2013). *Second*, under settled FAA law, "any doubts" regarding the scope and application of an admittedly binding clause "should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25. That includes questions about "the construction of the contract language itself or an allegation of waiver." *Id.*

definitions to determine such a meaning." *Id.* (internal quotation marks omitted); *see Bedgood II*, 88 F.4th at 1364 (using a dictionary to define the word "enforcement" in an arbitration agreement). Here, "unavailable" has a clear dictionary meaning: "unable or unwilling" to do something—*e.g.*, the AAA was "unable or unwilling" to hear Woodwerx's claim. *See supra* pp. 29-30. There is nothing ambiguous about this term. Certainly, the average person off the street would not define "unavailable" according to the narrow, results-driven definition advanced by Plaintiffs and adopted by the district court.

The district court further held that the parties' promise not to go to court was little more than "standard boilerplate" that did not merit application by its plain, all-caps terms. Dkt.49 at 14. Here again, the district court ignored the law. The promise not to go to court is at the heart of the parties' agreement to arbitrate. The fact that it is a "standard boilerplate" provision in every arbitration clause is thus unsurprising. And it is nonetheless enforceable like any other contract term. Under Florida law, "the mere fact that a contract includes boilerplate language is not sufficient to invalidate it." *E.g.*, *Consol. Res. Healthcare Fund I, Ltd.*, 853 So. 2d at 504 (reversing a trial-court order refusing to enforce a "boilerplate" arbitration

agreement). True, the promise not to go to court may be subject to conditions and carve-outs provided in the parties' arbitration agreement. Dkt.49 at 14 (making the same point). But, as explained above, no condition or carve out in *this arbitration agreement* applies in the present circumstances, and the parties' promise not to sue in court still applies. *See Multi-Fin. Sec. Corp.*, 386 F.3d at 1367 (when interpreting agreement to arbitrate, courts must give effect "to the parties' intent expressed by the ordinary meaning of the language they used").

Finally, the district court held that a "general" promise to arbitrate claims "does not preclude the consumer from getting the right back if the opposing party's indolence stands in the way of arbitration occurring." Dkt.49 at 14. To the extent that the district court suggests that purported "indolence" or "obstructing the arbitral process," *id* at 15, gives license to re-write or selectively enforce the parties' arbitration agreement, this too is wrong. Short of unconscionability—which the district court did not find and Plaintiffs did not argue—the arbitration agreement must be enforced as written. *Multi-Fin. Sec. Corp.*, 386 F.3d at 1367. Issues of purported obstruction go to the question of waiver Section 3—*i.e.*, whether the defendant has *lost* the right to arbitrate due to knowing and intentional

behavior. Indeed, the principal authorities cited by the district court in this piece of its analysis are all Section 3 or Section 4 cases. *E.g.*, *Hernandez v. MicroBilt Corp.*, 88 F.4th 215, 219 (3d Cir. 2023) (noting that, "under § 4, [the court] lack[s] the authority to rewrite [the parties'] agreement"); *Mason v. Coastal Credit, LLC*, No. 3:18-CV-835-J-39MCR, 2018 WL 6620684, at *8 (M.D. Fla. Nov. 16, 2018) (evaluating whether defendant had waived its right to compel arbitration under § 3 or § 4); *Figueredo-Chavez v. RCI Hosp. Holdings, Inc.*, 574 F. Supp. 3d 1167, 1172 (S.D. Fla. 2021) (same under § 4).[8]

* * * * *

The parties have concededly binding agreements to arbitrate that cover the claims asserted by Woodwerx and True Touch. Plaintiffs' attempts to create for themselves a contractual out to escape their promises to arbitrate fail, and the district court's analysis crediting Plaintiffs' arguments is legally flawed multiple times over. Because Plaintiffs have refused to

---

[8] The one exception is *Parm v. Nat'l Bank of California, N.A.*, 835 F.3d 1331 (11th Cir. 2016). But *Parm* reinforces Space Coast's point that the terms of an arbitration agreement must be enforced as written and "in a way that is consistent with the parties' intent." *Id.* at 1337. There, the Court held that because the parties' chosen tribal arbitration forum no longer existed (a fact that neither party disputed), it could not substitute an arbitrator nor could the parties be compelled to arbitrate. *Id.* at 1338. As written, the agreement in *Parm* did not allow such relief. *Id.*

honor their promises to arbitrate with Space Coast, the credit union is entitled to a stay of this case under Section 3 or an affirmative order that the parties go to arbitration under Section 4. Space Coast turns to these provisions next.

## II. THIS CASE SHOULD BE STAYED IN FAVOR OF ARBITRATION UNDER FAA SECTION 3.

### A. "Default" Under FAA Section 3 Requires an Intentional Waiver of Arbitration Rights, Not Mere Negligence in Asserting Those Rights.

Courts must stay district-court litigation so that the parties may pursue arbitration under a binding agreement, so long as "the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3; *Hernandez v. Acosta Tractors Inc.*, 898 F.3d 1301, 1305 (11th Cir. 2018). Pursuant to Section 3, a lawsuit must be stayed and referred to arbitration "in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration." As this Court has long held, a "default" occurs under Section 3 when a party "waive[s]" its right to arbitrate. *Morewitz v. W. of England Ship Owners Mut. Prot. & Indem. Ass'n (Luxembourg)*, 62 F.3d 1356, 1365 n.16 (11th Cir. 1995); *Ivax Corp.*, 286 F.3d at 1315 n.17 ("We have before clarified that the term 'default' carries the same

meaning as 'waiver.'"); *Freeman v. SmartPay Leasing, LLC*, 771 F. App'x 926, 932 (11th Cir. 2019) ("One way that an applicant can 'default in proceeding with such arbitration' is by waiving the right to arbitrate.").

This Court is not alone in understanding "default" to mean waiver. The majority of this Court's sister circuits hold the same view. *Marie v. Allied Home Mortg. Corp.*, 402 F.3d 1, 13 (1st Cir. 2005) ("A 'default' has generally been viewed by courts as including a 'waiver.'"); *Doctor's Assocs., Inc. v. Distajo*, 66 F.3d 438, 454 (2d Cir. 1995) (holding that "default" under § 3 "refer[s] to a party who, when requested, has refused to go to arbitration or who has refused to proceed with the hearing before the arbitrators once it has commenced") (internal quotation marks omitted); *Wheeling Hosp., Inc. v. Health Plan of the Upper Ohio Valley, Inc.*, 683 F.3d 577, 586 (4th Cir. 2012) ("Default in this context resembles waiver[.]"); *Breadeaux's Pisa, LLC v. Beckman Bros.*, 83 F.4th 1113, 1117 (8th Cir. 2023) ("When addressing whether the applicant defaulted, we determine whether the applicant waived its contractual right to arbitrate."); *Pre-Paid Legal Servs., Inc. v. Cahill*, 786 F.3d 1287, 1296 (10th Cir. 2015) (explaining that "default" in § 3 includes "waiver").

But not the district court. It reduced Section 3's "default" standard to bare negligence: "the failure to perform a contractual obligation, regardless of the degree of intentionality." Dkt.49 at 11. Plaintiffs advanced a similar standard in their opposition. Dkt.37 at 9-11. This is wrong under this Court's precedent and the weight of authority from this Court's sister circuits.[9] It is basic that district courts are obligated to follow circuit precedent; district courts commit reversible error when they don't. *In re Hubbard*, 803 F.3d 1298, 1309 (11th Cir. 2015) ("[C]ourts of this circuit are bound by the precedent of this circuit."); *see also United States v. Vega-Castillo*, 540 F.3d 1235, 1236 (11th Cir. 2008) ("Under the prior precedent rule, we are bound to follow a prior binding precedent unless and until it is overruled by this court *en banc* or by the Supreme Court.") (internal quotation marks omitted).

True, the district court addressed waiver as an alternative basis for its holding (more on that in a moment). But that analysis consists of one

---

[9] A minority of circuits have equated "default" to bare neglect or forfeiture. *Sink v. Aden Enterprises, Inc.*, 352 F.3d 1197, 1199 n.2 (9th Cir. 2003) (defining default as "[t]he omission or failure to perform a legal or contractual duty; esp., the failure to pay a debt when due"); *Zuckerman Spaeder, LLP v. Auffenberg*, 646 F.3d 919, 922 (D.C. Cir. 2011) ("forfeiture, not waiver, is the appropriate standard for evaluating a late-filed motion under Section 3"). Respectfully, these circuits are wrong for the reasons articulated by the majority of other circuits—including this one.

40

paragraph at the end of a 10-page analysis that is otherwise devoted to negligence. Dkt.49 at 9-18. That means all but one paragraph of the district court's arbitration analysis below is wrong as a matter of law because it applied the wrong legal standard. No further review is required. *See also infra* § I.D. (explaining why, in all events, Space Coast was not negligent).

The district court's error is not harmless. Waiver of a right is drastically different than negligence in asserting a right. Waiver is the "*intentional* relinquishment or abandonment of a known right." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 417 (2022) (emphasis added). Conversely, negligence (also referred to as forfeiture) can be entirely unwitting: "When we say a defendant has forfeited a particular right, we mean that the defendant has lost the right through some action or inaction, but has done so under circumstances that preclude characterizing the loss as knowing, voluntary, and intentional." *Vreeland v. Zupan*, 906 F.3d 866, 876 (10th Cir. 2018); *see Negligence*, BLACK'S LAW DICTIONARY (11th ed. 2019) (defining negligence as excluding conduct that is "conduct that is intentionally, wantonly, or willfully" committed). To the extent the district court stripped Space Coast of its right to arbitrate under a finding of negligence, the district court

41

relieved Plaintiffs of their burden to show knowledge and intentionality on part of Space Coast.

Critically, neglect can typically be cured, or it can be excused in the absence of prejudice to the other side. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993) (inadvertent failure to timely file a proof of claim can constitute excusable neglect under Bankruptcy Rule 9006(b)(1)); *Cheney v. Anchor Glass Container Corp.*, 71 F.3d 848, 849-50 (11th Cir. 1996) (delayed filing was excusable neglect because there was no prejudice, no bad faith, and the mistake was unintentional). Intentional abandonment cannot. *In re Checking Acct. Overdraft Litig.*, 754 F.3d 1290, 1294 (11th Cir. 2014) (noting that "[a]rbitration should not be compelled when the party who seeks to compel arbitration has waived that right."); *see* Dkt.49 at 18 (district court noting the same).

This distinction is significant in the wake of the Supreme Court's recent decision in *Morgan v. Sundance, Inc.* There, the Supreme Court rejected prejudice as an element of a statutory "default" under § 3 of the FAA. 596 U.S. 411, 419 (2022). By eliminating the element of prejudice from Section 3's "default" analysis, the Supreme Court all but confirmed that "default" means an intentional abandonment of rights. Were that not the case, a party

42

could forever lose the right to arbitrate based upon an unintentional and harmless clerical error—exactly what the district court did here, Dkt.49 at 11, and what Plaintiffs will doubtlessly advocate in their red brief. Such a draconian result is impossible to square with the strong congressional preference in favor of arbitration and alternative dispute resolution. Indeed, this Court and the Supreme Court have long said that "any doubts" related to "an allegation of waiver, delay, or a like defense to arbitrability" must "be resolved in favor of arbitration." *Jones*, 866 F.3d at 1264 (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25). A negligence-based "default" simply makes no sense under this rule.

The district court incorrectly blurred the line between waiver and negligence, resulting in a finding that Space Coast had apparently relinquished an essential and contracted-for right to arbitrate without ever intending to do so.

### B.    Plaintiffs Failed to Prove that Space Coast Defaulted as to Woodwerx.

Under the correct standard, Plaintiffs came nowhere close to showing that Space Coast was in "default" under Section 3, and the district court's one-paragraph analysis to the contrary is wrong. "To determine whether a

43

party has defaulted for Section 3 purposes, a court must decide if, under the totality of the circumstances, the party has acted inconsistently with the arbitration right." *Bedgood II*, 88 F.4th at 1369 (internal quotation marks omitted). The classic example of this is when "a party seeking arbitration substantially participates in litigation to a point inconsistent with an intent to arbitrate." *Morewitz*, 62 F.3d at 1366. The idea here is that, by participating materially in district-court litigation before seeking to arbitrate, the party has engaged in "conduct [that] ***manifests the party's intent*** to waive arbitration." *Krinsk v. SunTrust Banks, Inc.*, 654 F.3d 1194, 1201 (11th Cir. 2011) (emphasis added). Therein lies the operative question: Does the record show an intent to abandon arbitral rights and proceed in court? *Id.* The clear answer: No.

Importantly, it is ***Plaintiffs' burden to prove waiver***—not Space Coast's burden to disprove it. "Because federal policy strongly favors arbitration, the party who argues waiver bears a heavy burden of proof." *Id.* at 1200 n.17; *Gutierrez v. Wells Fargo Bank, NA*, 889 F.3d 1230, 1236 (11th Cir. 2018) (the party arguing for waiver bears a heavy burden of proof in light of the federal policy favoring arbitration). The evidence submitted by Plaintiffs

44

falls far short of showing an "intentional relinquishment or abandonment" of arbitration rights by Space Coast. *See Morgan*, 596 U.S. at 417.

Start first with Woodwerx. They at least tried to arbitrate, though they abandoned that effort prematurely. Space Coast has always been ready and willing to arbitrate Woodwerx's claim on an individual basis. The undisputed record demonstrates this. Dkt.26 at 3, ¶¶ 5-8. It was only due to a clerical error that the AAA initially (and erroneously) refused to accept Woodwerx's claim. *Id.* at 2, ¶ 4. The AAA shouldn't have denied the claim and should have given Space Coast the opportunity for expedited registration and review of the arbitration agreement. *See supra* pp. 10-12. Nevertheless, and per the AAA's instructions, Space Coast immediately reached out upon receiving the April 2023 denial letter to object, express its desire to arbitrate, and ask what needed to be done to get the process back on track. *Id.* at 14-17. Again, this is undisputed.

The ***only evidence*** Plaintiffs submitted to meet their "heavy burden" of proving waiver was the April 2023 denial letter and the subsequent July 2023 letter confirming that the clause had been successfully registered. Dkt.38-3; 38-4. However, this evidence falls far short. Plaintiffs do not and cannot explain how an intent to abandon arbitration may be gleaned from

these two letters alone. If anything, the letters confirm the opposite. Space Coast has always intended to arbitrate and immediately took the appropriate steps to sort out the procedural issues with the AAA.

Space Coast's undisputed rebuttal evidence reinforces this point. Immediately after receiving the April 2023 denial letter from the AAA, Space Coast did as it was instructed to do: Its counsel reached out to the AAA to initiate the process of remedying the AAA's declination to administer arbitration. Dkt.26 at 3, ¶ 5. That process was unarguably initiated well before Plaintiffs ever filed their original complaint in the district court, let alone before Space Coast was served with the complaint or moved to compel arbitration.

The AAA failed to respond to Space Coast's outreach. *Id.* ¶¶ 5-6. After weeks of silence, Space Coast took further initiative by submitting its arbitration clause for review through the regular, non-expedited pathway. *Id.*; *see also* Consumer Clause Registry Search Results, *supra* p. 16. It began this process in early June—several days *before* it was served with Plaintiffs' original complaint. *Id.* To be expected, the process was not immediate or automatic. Dkt.26 at 3, ¶ 7. But Space Coast nonetheless saw the process through and successfully registered its arbitration clause.

46

Plaintiffs do not deny that Space Coast has consistently expressed its willingness to arbitrate theirs claims. They instead postulate that Space Coast's failure to pre-register its clause with the AAA, without more, constituted an intentional abandonment of its arbitration rights. The district court, in its brief analysis of waiver, agreed with and amplified this point. It concluded that Space Coast had intentionally abandoned its right to arbitrate against Plaintiffs because (1) it failed to take the steps "necessary" for arbitration to be had by failing to pre-register the arbitration agreement with the AAA, and (2) it allegedly did not correct the issues with the AAA "until *two days after* Plaintiffs filed this action—which was more than a month since the AAA declined to administer arbitration." Dkt.49 at 17 (emphasis in original). Both points are demonstrably false, and the district court's conclusion is wrong.

First, Space Coast did not fail to take any "necessary" steps. As explained in detail above, *supra* pp. 10-12, Consumer Rule 12 does not require immediate pre-registration of an arbitration clause. It at most suggests that a business "should" (1) "notify the AAA of the existence of such a consumer contract … at least 30 days before the planned effective date" and (2) "provide the AAA a copy of the arbitration agreement." But if

47

this does not happen, Consumer Rule 12 says the AAA "will" conduct an "expedited review" of an arbitration clause upon the filing of an arbitration demand by a consumer. Despite the plain-text requirement that expedited review "will" occur under such circumstances, here it did not. Space Coast did not act contrary to its reasonable interpretation of the AAA Consumer Rules, much less intentionally so. And Plaintiffs do not and cannot explain how a reasonable (and, indeed, correct) understanding of the Consumer Rules rises to the level of waiver against Woodwerx.[10]

Second, the district court was wrong when it said that Space Coast waited to begin taking any steps evidencing its intent to proceed with arbitration until "*two days after* Plaintiffs filed this action." Dkt.49 at 17 (emphasis in original). Space Coast's counsel reached out to the AAA on April 25, 2023, just five days after the AAA mailed the denial letter to the credit union, indicating that Space Coast would like to proceed with arbitration and asking the AAA to provide the specific bases for

---

[10] Although the district court may properly consider the AAA's decision, "[the] AAA's administrative determination is not binding on this Court[.]" *Bedgood II*, 88 F.4th at 1364 n.5 (quoting *Kaspers*, 631 F. App'x at 783). In all events, to prevail here, Space Coast need only make the modest point that the AAA's decision is not indicative of waiver, given its reasonable reading of Consumer Rule 12.

administratively closing the arbitration case. Dkt.26 at 3, ¶ 5. After the case administrator failed to respond to counsel's outreach, Space Coast submitted its arbitration agreement for review through the regular, non-expedited pathway and paid associated fees. The AAA's public registry shows that Space Coast registered on June 7, 2023—the same day Plaintiffs' filed suit and a week before they requested waiver of service—and the AAA notified Space Coast that it had accepted its arbitration clause in late July. *See* Consumer Clause Registry Search Results, *supra* p. 16.

As to Woodwerx, this Court's decision in *Bedgood II* is materially different. For two key reasons, the Court found that one of the defendants (Wyndham Vacation Resorts) had defaulted its right to arbitrate against the plaintiffs. *First*, Resorts made no demonstrable effort to cure its non-compliance with the AAA's policies. As the Court observed: "The record doesn't reflect, nor have we been told, whether Resorts has submitted its arbitration clause to the AAA for review or whether it otherwise intends to comply with the AAA's Consumer Arbitration Rules (or even challenge the AAA's determination that its clause is noncompliant)." 88 F.4th at 1361. The Court pointed to this fact repeatedly in concluding that Resorts had acted intentionally, stating in no uncertain terms that it affirmed the district court's

conclusion that Resorts was in "default" under Section 3 "especially [ ] given that Resorts has made no effort to investigate—let alone remedy—its noncompliance before the AAA." *Id.* at 1366. *Second*, and relatedly, the noncompliance was caused by a non-curable defect with the substance of the arbitration clause. *Id.* 1360-61 & n.2, 1365 & n.7. The agreement fell below the AAA's due-process, which Resorts couldn't easily fix—and that's likely why it didn't try. *Id.* **Neither** of these key factors is present here. Space Coast immediately moved to fix what was ultimately a curable procedural hiccup.

At no point did Space Coast exhibit anything but an intention to arbitrate. Plaintiffs did not offer a single piece of conflicting evidence to suggest otherwise. In finding otherwise, the district court misapplied the plain text of Consumer Rule 12 and erred by finding an intentional abandonment of arbitral rights, based on evidence that showed the exact opposite intent.

### C.  Plaintiffs Failed to Prove that Space Coast Defaulted as to True Touch.

True Touch is in an entirely distinct position regarding the arbitrability of its claims. It has no evidence at all that Space Coast intentionally abandoned its right to arbitrate True Touch's claims. True Touch never even

50

tried to arbitrate—or even informally mediate—prior to filing this lawsuit. Space Coast first invoked the parties' arbitration agreement in late July 2023, when it demanded in writing that True Touch dismiss its suit and proceed to arbitration. Dkt.26 at 3, ¶ 8. It was at this point (not before) that True Touch lost its right to go to court and was forced to arbitrate: "If either you or we *elect to resolve a particular claim through arbitration*, you will give up your right to go to court." Dkt.8-2 at 10, § 37 (capitalization removed and emphasis added). By the time Space Coast elected to arbitrate True Touch's claims, the AAA was ready and willing to take True Touch's case. Dkt.26 at 3, ¶¶ 7-8; Consumer Clause Registry Search Results, *supra* p. 16.

True Touch has never explained how there can be a waiver under these circumstances. Instead, it tries to ride into court on the coattails of Woodwerx. Pointing to a single line out of the erroneous April 2023 letter from the AAA addressed *only* to Woodwerx, True Touch claims it would have been "futile" for it to demand arbitration against Space Coast, which somehow amounts to an intentional abandonment of rights by Space Coast. But True Touch never explains how—let alone provides any evidence establishing that—Space Coast intentionally abandoned a right that neither party had yet invoked. Critically, True Touch provided no evidence of its

51

desire or intent to arbitrate its claims with Space Coast before July 2023. All it has is lawyer argument in its opposition brief below—and even then, no representation that True Touch reviewed the April 2023 letter to Woodwerx or the AAA's public registry and, as a result, abandoned plans to arbitrate. In all events, argument is not evidence. *United States v. Lopez*, 590 F.3d 1238, 1256 (11th Cir. 2009) (noting that statements and arguments of counsel are not evidence). It would have been incredibly easy for the proprietor of True Touch to submit a sworn declaration laying out the relevant facts. But it did not.

The district court provided no separate analysis of how Space Coast defaulted as to True Touch. Instead, in a single footnote, the court excused True Touch from proving up its affirmative defense on grounds of "futility," stating: "True Touch and any other credit union member could readily determine Space Coast's lack of compliance by looking to the AAA's public database and finding the credit union's provision absent, realizing that submitting an arbitration demand would be futile." Dkt.49 at 12 n.2. The district court's reasoning is legally and factually wrong.

As a matter of law, there is no "futility" exception to the application of Section 3. The only authority offered by either True Touch or the district

52

court for this proposition is the district court's now-vacated decision in *Bedgood I*. *Id.* (citing 595 F. Supp. 3d at 1202 n.9). This Court's decision in *Bedgood II* did not adopt—and, in fact, is inconsistent with—the district court's "futility" theory. 88 F.4th at 1369. Addressing whether two defendants had waived their arbitration rights against plaintiffs who had never demanded arbitration, this Court said "no" on the record before it. *Id.* That's because "there [was] no definitive indication in the record that the AAA actually determined that [those defendants] had violated AAA policies as relevant to these plaintiffs." *Id.* The Court took this position while acknowledging that it was "tempting to assume" that these defendants would suffer the same fate before the AAA as Resorts, given their "similar arbitration clauses." *Id.* But this Court correctly recognized that similarities and tempting assumptions are not a legitimate basis for stripping a defendant of arbitral rights. The plaintiffs needed an "evidentiary basis—in the form, say, of an actual rejection letter" in order to prove up "default" under Section 3. *Id.* at 1369-70.

To be sure, this Court has long recognized futility as a valid argument ***against*** waiver. *Miller v. Drexel Burnham Lambert, Inc.*, 791 F.2d 850, 854 (11th Cir. 1986), *abrogation on other grounds recognized by Feldspar Trucking Co. v.*

*Greater Atlanta Shippers Ass'n*, 849 F.2d 1389, 1391 n.2 (11th Cir.1988) ("This circuit does not require a litigant to engage in futile gestures merely to avoid a claim of waiver."). And that makes sense. "[I]f an earlier attempt to assert the defense of arbitration would have been futile, this failure to take a futile action is not inconsistent with that defense." *Chassen v. Fid. Nat'l Fin., Inc.*, 836 F.3d 291, 296 (3d Cir. 2016). But that logic doesn't work to **prove** waiver, as this Court recognized in *Bedgood II*, discussed below. Further, this Court has recognized that, to the extent it even applies, futility plays a very narrow role in arbitration. *Garcia v. Wachovia Corp.*, 699 F.3d 1273, 1278 (11th Cir. 2012) ("But absent controlling Supreme Court or circuit precedent foreclosing a right to arbitrate, a motion to compel arbitration will almost never be futile."). So long as the "the arbitration agreement was at least arguably enforceable," futility is a non-starter. *Id.* (internal quotation marks omitted). Here, True Touch "at least arguably" could have arbitrated if it would have bothered to try.

Factually, the case against "futility" is even stronger here than it was in *Bedgood II*. Not only is there a dearth of evidence that the AAA would have rejected True Touch's demand, had it made one. But there is also affirmative—and, indeed, indisputable—evidence that the AAA would have

54

*accepted* the claim. As explained above, the AAA's doors were open to True Touch by the time one of the parties (Space Coast) elected to arbitrate. There's also no guarantee that the AAA would have repeated its misapplication of Consumer Rule 12 with True Touch (one would reasonably hope not). And, in all events, True Touch could have utilized the substitute-forum process, just like Woodwerx should have.

Simply put, there is no evidentiary basis from which to conclude that Space Coast intentionally waived its right to arbitrate with True Touch and as a result, it should be ordered to arbitration.

### D.    Plaintiffs Failed to Show a "Default" Even Under a Negligence Standard.

Even though legally wrong, the district court's negligence analysis fails on its own terms. It grounds its determination of negligence entirely on the premise that Space Coast needed to pre-register its clause with the AAA before anyone filed an arbitration demand. Dkt.49 at 11. But this is wrong. By its plain terms Consumer Rule 12, the AAA must afford a respondent the chance for expedited review and registration of its clause. This pathway is frequently (if not most commonly) used by respondents—undersigned counsel has done it multiple times for clients without issue. At a bare

minimum, Space Coast's understanding of the rule is reasonable, such that its failure to pre-register with the AAA does not rise to the level of negligence. Further—and importantly—it is undisputed that the AAA did *not* give Space Coast a chance for expedited registration and review. It summarily (and incorrectly) rejected Woodwerx's demand shortly after filing.

On top of this, Space Coast took immediate action to fix the problems with the AAA. *Supra* pp. 14-17. This further confirms that Space Coast did not attempt to thwart Woodwerx's attempt to arbitrate. Rather, it took prompt and reasonably prudent measures to facilitate arbitration. Finally, even if Space Coast were remise in facilitating arbitration through the AAA, that still wouldn't rise to a wholesale default of the right to arbitrate. As explained above, *supra* pp. 9, 13, the arbitration agreement requires the selection of a substitute arbitral forum if the AAA is unavailable. Woodwerx should have consulted with Space Coast to find another arbitral forum.

* * * * *

Ultimately, the law is clear that default under Section 3 requires a showing of an intentional waiver of the right to arbitrate, as opposed to mere neglect. Nevertheless, the district court wrongly applied the latter standard,

finding that in the face of a clerical error that it diligently sought to remedy, Space Coast defaulted on its arbitration rights. And even though it was *Plaintiffs'* burden to prove up waiver, the evidence in the record does not even come close to meeting that burden, for either Woodwerx or True Touch.

## III. BOTH PLAINTIFFS SHOULD BE ORDERED TO INDIVIDUAL ARBITRATION UNDER FAA SECTION 4.

Additionally, Space Coast is entitled to an order that both Plaintiffs proceed to individual arbitrations, pursuant to Section 4 of the FAA. The statute provides that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. This standard contains two "separate" but "causally related" conditions for relief: "first, the party resisting arbitration must have 'fail[ed], neglect[ed], or refus[ed]" to arbitrate; and second, the party seeking to direct arbitration must have been 'aggrieved' *by* that failure, neglect, or refusal." *Bedgood II*, 88 F.4th at 1366 (quoting 9 U.S.C. § 4) (emphasis in original).

Both conditions are satisfied as to both Plaintiffs. The district court's holding to the contrary is predicated upon many of the same legal and factual misunderstandings explained above.

## A.    Plaintiffs Have Improperly Refused to Arbitrate.

*Woodwerx*: Woodwerx failed to live up to its arbitral obligations in two key ways. *First*, it cut off efforts to arbitrate its claims prematurely. Though Woodwerx properly attempted to arbitrate with the AAA, it should not have abandoned those efforts based upon the AAA's April 2023 denial letter. Woodwerx knew full and well that Space Coast was entitled to an opportunity to seek expedited review and registration of the parties' arbitration clause, per the plain text of Consumer Rule 12. It knew that Space Coast was erroneously denied that opportunity. And it knew any purported non-compliance with Consumer Rule 12 was curable. The denial letter itself invited Space Coast to contact the AAA (which it did, only to be met with inexplicable silence); and, notwithstanding the AAA's lack of engagement, Space Coast cured the defect. By the time Space Coast moved to compel arbitration, the AAA's doors were open to Woodwerx.

Separately, Woodwerx had a duty to confer with Space Coast and find a substitute arbitration forum if the AAA was "unavailable." For the reasons

explained above, *supra* pp. 29-32, this provision is on point. The AAA's initial unwillingness to take Woodwerx's claims constituted unavailability, and the terms of the arbitration agreement required Woodwerx to work with Space Coast to find another arbitrator. The fact that the April 2023 denial letter stated to the contrary is irrelevant because the AAA rules must yield to the plain terms of the arbitration agreement, per the agreement's conflicts clause. By running off to court instead, Woodwerx failed to adhere to the parties' agreement.

*True Touch*: The case against True Touch is even clearer. It never tried to arbitrate. Nor did it testify that it ever intended to arbitrate. Nor did it submit any evidence that it abandoned any prior intention to arbitrate based upon Woodwerx's experience or a review of the AAA's public registry. *See supra* pp. 50-52. In the absence of such evidence (which it cannot supply for the first time on appeal), True Touch's obligation to arbitrate was triggered upon Space Coast's demand that it do so on July 26, 2023. The AAA's doors were indisputably open at that time. True Touch failed to abide by its arbitration agreement with Space Coast by refusing to arbitrate and maintaining this suit.

The district court's one-paragraph analysis of Section 4 fails as a matter of law. Dkt.49 at 11-12. Instead of addressing the issues above, it concluded that the AAA's April 2023 denial letter to Woodwerx was good enough to free Woodwerx and "any other credit union member"—including True Touch—from its obligations under the arbitration agreement due to "futility." *Id.* at 12 & n.2. This is wrong for all the reasons discussed above. The AAA's April 2023 letter is flawed under its own rules. *Supra* pp. 10-12, 47-48. In any event, it did not excuse either party from arbitrating with Space Coast, nor did it create a right for either of them to go to court. *Supra* pp. 28-38. And there is no free-floating "futility" exception to Section 4, nor is there any evidence in the record that it would have been futile for either party to abide by the terms of their arbitration agreement.

Under controlling law and on this record, Woodwerx and True Touch have failed to live up to their duties under the parties' arbitration agreement. The first condition of Section 4 is therefore satisfied.

### B.    Space Coast Is Aggrieved by Plaintiffs' Refusal to Arbitrate.

*Woodwerx*: Space Coast is aggrieved by Woodwerx's refusal to arbitrate. By the time Space Coast moved for relief, the AAA was available to hear Woodwerx's claim. Woodwerx simply refused to move forward with

arbitration. Further, even before the issues with the AAA were ironed out, Woodwerx should have—but did not—confer with Space Coast to find a substitute arbitral forum. Because of Woodwerx's refusal to adhere to the terms of the parties' arbitration agreement, Space Coast now faces a putative class-action lawsuit in federal court—the precise outcome the parties contracted to avoid.

*True Touch*: For similar reasons, Space Coast is aggrieved by True Touch's refusal to arbitrate. The case here is even easier than it is for Woodwerx. By the time Space Coast made the initial election to arbitrate True Touch's claims, nothing stood in the way of True Touch proceeding to arbitration. The AAA was available, as were other arbitral forums. True Touch nevertheless insisted upon staying in federal court in the class-action form—a blatant violation of its arbitration agreement and a deprivation of Space Coast's rights under the same.

The district court never analyzed whether Space Coast was aggrieved by Plaintiffs' conduct. Nor did Plaintiffs in their briefing below. The causal relationship between Plaintiffs' failure to honor their agreements to arbitrate and the ensuing harm to Space Coast is clear and unquestionable. The district court's judgment on this front is wrong and must be reversed.

61

## CONCLUSION

The district court's decision denying Space Coast's motion to compel arbitration should be reversed. Both Woodwerx and True Touch should be ordered to arbitrate their claims with Space Coast, and the action below should be stayed. Even if the Court believes that Space Coast has lost its right to arbitrate with Woodwerx, True Touch should be ordered to arbitration at a bare minimum.

Date: March 27, 2024                    Respectfully submitted,

                                        /s/ Stuart M. Richter

Eric T. Werlinger                       Stuart M Richter
KATTEN MUCHIN ROSENMAN LLP              KATTEN MUCHIN ROSENMAN LLP
1919 Pennsylvania Ave. NW               2121 Avenue of the Stars
  Suite 800                               Suite 1100
Washington, DC 20006                    Los Angeles, CA 90067
(202) 625-3500                          (310) 788-4400
eric.werlinger@katten.com               stuart.richter@katten.com


*Counsel for Appellant Space Coast Credit Union*

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with Fed. R. Appl. P. 32(a)(7) because it contains 12,930 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f). This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it was prepared in Microsoft Word 2016 using a proportionally spaced typeface (Book Antiqua) in 14-point font.

Date: March 27, 2024                  /s/ Stuart M. Richter

**CERTIFICATE OF SERVICE**

I certify that on March 27, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the appellate CM/ECF system, which will send a notice of electronic filing to all parties appearing in this matter.


Date: March 27, 2024                 /s/ Stuart M. Richter