No. 24-10019

# In the United States Court of Appeals for the Eleventh Circuit

MERRITT ISLAND WOODWERX, LLC, and TRUE TOUCH SERVICES, LLC,
*individually and on behalf of all others similarly situated*,
*Plaintiffs-Appellees*,

*v.*

SPACE COAST CREDIT UNION,
*Defendant-Appellant*.

Appeal from the U.S. District Court for the Middle District of Florida,
No. 6:23-cv-01066, Hon. Paul G. Byron

## APPELLEES' ANSWER BRIEF

J. Gerard Stranch, IV
STRANCH, JENNINGS & GARVEY, PLLC
223 Rosa L. Parks Ave., Suite 200
Nashville, TN 37203
(615) 254-8801
gstranch@stranchlaw.com

Jacob Phillips
JACOBSON PHILLIPS PLLC
478 E. Altamonte Dr, Ste 108-570
Altamonte Springs, FL 3701
(407) 720-4057
jacob@jacobsonphillips.com

Lynn A. Toops
Vess A. Miller
COHEN & MALAD, LLP
1 Indiana Square, Suite 1400
Indianapolis, IN 46204
(317) 636-6481
ltoops@cohenandmalad.com
vmiller@cohenandmalad.com

*Counsel for All Plaintiffs-Appellees*

April 26, 2024

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Under Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1, Appellees concur in Appellant's Certificate of Interested Persons and Corporate Disclosure Statement and add one additional person, an attorney for Appellees, as an interested person:

Miller, Vess A.

/s/Vess A. Miller
Vess A. Miller
*Counsel for Appellees*

## STATEMENT REGARDING ORAL ARGUMENT

Appellees believe that oral argument is unnecessary because the very same issues involved in this case were recently resolved in Appellees' favor by a unanimous panel of this Court in *Bedgood v. Wyndham Vacation Resorts, Inc.*, 88 F.4th 1355 (11th Cir. 2023), and the record in this case is not voluminous. However, if the Court believes that oral argument would assist in the decision of this case, Appellees' counsel would be pleased to participate in oral argument.

# TABLE OF CONTENTS

Certificate of Interested Persons and
Corporate Disclosure Statement ............................................................. C-1

Statement Regarding Oral Argument ....................................................... i

Table of Authorities ................................................................................ iv

Introduction ............................................................................................. 1

Statement of the Issues ........................................................................... 3

Statement of the Case ............................................................................. 3

    I.    Space Coast's arbitration agreement expressly
         incorporates AAA's Rules. .......................................................... 3

    II.   AAA's Rules warn that if a business does not notify
         AAA 30 days before implementing a AAA arbitration
         agreement then AAA may decline to arbitrate and that
         any party may instead seek resolution in court. ......................... 4

    III. Space Coast failed to notify AAA about Space Coast's
         Arbitration Agreement for over three years after its
         implementation ............................................................................ 5

    IV. AAA declined to administer an arbitration under Space
         Coast's Arbitration Agreement due to Space Coast's failure
         to comply with AAA's policies, and AAA informed the
         parties they could seek resolution in court. ............................... 5

    V.   Plaintiffs filed this action in the district court. ......................... 7

    VI. The district court correctly denied Space Coast's motion to
         compel arbitration. ...................................................................... 8

Summary of the Argument ..................................................................... 11

Standard of Review ................................................................................ 11

Argument ................................................................................................ 12

I.  Under this Court's holding in *Bedgood II*, the Court should affirm the district court's order denying Space Coast's motion to compel arbitration because Space Coast was in default and was not aggrieved by any failure to arbitrate. ...... 12

II.  Each of Space Coast's attempts to avoid application of *Bedgood II* fail ........................................................ 19

    A.  AAA was not "unavailable" and, even if it was, AAA's unavailability gave Plaintiffs the right under the Arbitration Agreement to choose the district court as the forum for dispute resolution. ....................................... 19

    B.  Space Coast's attempts to portray its own default as a "clerical error," "mistake," and "AAA's error" are unsupported by the record and the law ............................ 23

    C.  Space Coast's description of *Bedgood II* as it relates to True Touch misrepresents that case's application to parties who have a materially identical arbitration clause with a party for whom AAA has declined to arbitrate due to a failure to comply with AAA's policies. ... 31

Conclusion ............................................................................... 34

Certificate of Compliance ........................................................ 1

Certificate of Service ............................................................... 1

iii

# TABLE OF AUTHORITIES

**Cases**

*Allied Van Lines, Inc. v. Bratton,*
    351 So.2d 344 (Fla. 1977)....................................................27

*Andrews v. Biggers,*
    996 F.3d 1235 (11th Cir. 2021) ..........................................19

*Bedgood v. Wyndham Vacation Resorts, Inc.* (*Bedgood I*),
    595 F. Supp. 3d 1195 (M.D. Fla. 2022)............................8, 13

*Bedgood v. Wyndham Vacation Resorts, Inc.* (*Bedgood II*),
    88 F.4th 1355 (11th Cir. 2023) ....................................*passim*

*Jones v. Waffle House, Inc.,*
    866 F. 3d 1257 (11th Cir. 2017) .........................................11

*Merritt Island Woodwerx, LLC v. Space Coast Credit Union,*
    No. 6:23-cv-1066-PGB-DCI,
    2023 WL 8699470 (M.D. Fla. Dec. 15, 2023) .................. 8, 9, 10, 22, 25

*Morgan v. Sundance, Inc.,*
    596 U.S. 411 (2022) ..........................................................12

*Multi-Fin. Secs. Corp. v. King,*
    386 F.3d 1364 (11th Cir. 2004) .........................................12

*Smith v. GTE Corp.,*
    236 F.3d 1292 (11th Cir. 2001) .........................................19

*United States v. Steele,*
    147 F.3d 1316 (11th Cir. 1998) (en banc) ..........................19

**Other Authorities**

NCUA, *NCUA Chairman Todd M. Harper Remarks at the Indiana
    Credit Union League* (May 2023),
    https://ncua.gov/newsroom/speech/2023/ncua-chairman-todd-m-
    harper-remarks-indiana-credit-union-league (last visited Apr. 25,
    2024)..................................................................................7

## INTRODUCTION

This Court's recent decision in *Bedgood v. Wyndham Vacation Resorts, Inc.* (*Bedgood II*), 88 F.4th 1355 (11th Cir. 2023) , disposes of this appeal. In *Bedgood II*, this Court affirmed denial of a motion to compel arbitration in nearly identical circumstances, where, as here, the American Arbitration Association ("AAA") declined to administer arbitrations with one defendant's customers because of that defendant's failure to comply with AAA's notification and registration policies, and where the AAA's Rules expressly permit parties to sue in court if AAA declines arbitration. As in *Bedgood II*, the district court here properly denied Defendant Space Coast Credit Union's ("Space Coast's") motion to compel arbitration against both Merrit Island Woodwerx, LLC ("Woodwerx") and True Touch Services, LLC ("True Touch") for Space Coast's failure to comply with AAA's policies, and AAA's decision to decline to arbitrate with *any* of Space Coast's customers during that default.

Space Coast's attempts to avoid application of *Bedgood II* go nowhere. For example, as the district court correctly found, as in *Bedgood II*, AAA was "available" to administer the arbitration here, but

for Space Coast's default in failing to comply with AAA's policies. Thus, Plaintiffs were not required to seek out another arbitrator under the "unavailability clause." Moreover, even if the "unavailability clause" applied, the district court correctly held it would give Plaintiffs the right to choose the forum for dispute resolution, and Plaintiffs chose the district court, not arbitration. Likewise, the district court rightly rejected Space Coast's argument that it was not in default and, as in *Bedgood II*, the district court accepted the AAA's finding to the contrary, given Space Coast's admitted failure to comply with the AAA's policies. Finally, Space Coast misrepresents *Bedgood II*'s application to True Touch, which relied on AAA's letter to Woodwerx indicating that AAA would decline to arbitrate disputes with *any* of Space Coast's customers. Contrary to Space Coast's argument, *Bedgood II* expressly holds that in such circumstances a customer like True Touch is not required to engage in the futile act of filing for arbitration only to be rejected, but can instead proceed directly in court. As in *Bedgood II*, this Court should affirm the district court's order denying Space Coast's motion to compel arbitration.

## STATEMENT OF THE ISSUES

1.    As in *Bedgood II*, did the district court correctly deny Space Coast's motion to compel arbitration where AAA declined to administer arbitration with any of Space Coast's customers because Space Coast failed to comply with AAA's policies and where the AAA Rules that Space Coast chose provide that the parties are free to sue in court in such circumstances?

## STATEMENT OF THE CASE

## I.    Space Coast's arbitration agreement expressly incorporates AAA's Rules.

At all relevant times, Woodwerx and True Touch were credit union members of Space Coast. Doc. 8 at 2, ¶¶ 6–7. In January 2020, Space Coast amended its standard form account agreements to include an arbitration agreement (the "Arbitration Agreement"). Doc. 25 at 5, ¶ 15. The Arbitration Agreement required arbitration at the American Arbitration Association ("AAA") under the AAA's Consumer Arbitration Rules (the "Rules"). Doc. 25 at 7, ¶ 18 & Doc. 25-8 at 8, ¶ 37 (the "Arbitration Agreement").

## II.   AAA's Rules warn that if a business does not notify AAA 30 days before implementing a AAA arbitration agreement then AAA may decline to arbitrate and that any party may instead seek resolution in court.

On page 8 of AAA's Rules, AAA makes clear that if a business wishes to use AAA or its Rules then—"at least 30 days prior to the planned effective date of the [business's arbitration] program"—the business should:

> "• notify the [AAA] of its intention to do so, and
>
> • provide the [AAA] with a copy of the consumer dispute resolution plan"

Doc. 38 at 1, ¶ 2 & Doc. 38-1 at 9 § Notification (the "AAA Notification Provision"). AAA expressly warns that "*[i]f a business does not comply with this requirement, the [AAA] reserves the right to withhold its administrative services*." AAA Notification Provision, Doc. 38-1 at 9 (emphasis added).

In addition, Rule 1(d) of the AAA's Rules provides:

> Should the AAA decline to administer an arbitration, *either party may choose to submit its dispute to the appropriate court for resolution.*

Doc. 38 at 1, ¶ 2 & Doc. 38-1 at 11, Rule 1(d) (emphasis added).

4

### III. Space Coast failed to notify AAA about Space Coast's Arbitration Agreement for over three years after its implementation.

Despite AAA's clear requirements for notification to AAA at least 30 days before implementing an agreement in which AAA is named as arbitrator or AAA Rules are used, Space Coast failed to provide AAA with any prior notice and failed to register or provide its Arbitration Agreement to AAA before the Arbitration Agreement became effective in January 2020. Doc. 25 at 5, ¶ 15 & Doc. 38-4 at 1–2 (the "AAA Declination Letter").

### IV. AAA declined to administer an arbitration under Space Coast's Arbitration Agreement due to Space Coast's failure to comply with AAA's policies, and AAA informed the parties they could seek resolution in court.

On March 27, 2023, Woodwerx attempted to comply with Space Coast's Arbitration Agreement and filed a demand for arbitration against Space Coast with AAA. Doc. 38-2. However, over three years after Space Coast added its AAA Arbitration Agreement, Space Coast *still* had not notified AAA of Space Coast's Arbitration Agreement nor provided it to AAA for review and registration. AAA Declination Letter, Doc. 38-3 at 1–2. And, even though Space Coast was served with Woodwerx's March 27, 2023 arbitration demand, Doc. 38 at 1, ¶ 3 &

5

Doc. 38-2 at 1-2, Space Coast did not reach out to AAA or do *anything* to register its clause or pay the required AAA fees before receiving the AAA Declination Letter. Doc. 26 at 2, ¶¶ 3–4.

Having heard nothing from Space Coast, on April 20, 2023, the AAA sent a letter to Woodwerx's counsel and to Space Coast, declining to administer the arbitration. AAA Declination Letter, Doc. 38-3 at 1–2. The letter explained that "Prior to the filing of this arbitration, Space Coast Credit Union failed to comply with the AAA's policies regarding consumer claims . . . . Accordingly, we must decline to administer this claim and any other claims between Space Coast Credit Union and its consumers at this time." *Id.*, Doc. 38-3 at 1. The letter went on to explain that: "According to R-1(d) of the Consumer Rules, should the AAA decline to administer an arbitration, *either party* may choose to submit its dispute to the appropriate *court* for resolution." *Id.*, Doc. 38-3 at 1 (emphasis added). And the letter informed Space Coast that if it later came into compliance, "the AAA may consider at its sole discretion, accepting *newly filed consumer cases going forward*." *Id.*, Doc. 38-3 at 1 (emphasis added).

6

**V.    Plaintiffs filed this action in the district court.**

Having received the AAA Declination Letter, on June 7, 2023, Woodwerx, joined by True Touch, filed a class action complaint in the district court, Doc. 1, followed by an amended class action complaint six days later, Doc. 8. The amended class action complaint alleges that Space Coast breached its contracts, was unjustly enriched, and violated the Electronic Funds Transfer Act when it charged thousands of members: (1) $30 overdraft fees on debit card transactions that did not overdraw their accounts ("APSN Fees"); and (2) $30 fees in circumstances where another fee (not a transaction) overdrew an account. Doc. 8 at 1, 21–25, ¶¶ 1, 102–35. The Chairman of the National Credit Union Administration ("NCUA") has called the practice of charging APSN Fees "antithetical to the purpose of credit unions, detrimental to members, and inconsistent with the credit union system's statutory mission of meeting the credit and savings needs of consumers, especially those of modest means." NCUA, *NCUA Chairman Todd M. Harper Remarks at the Indiana Credit Union League* (May 2023), https://ncua.gov/newsroom/speech/2023/ncua-chairman-todd-m-harper-remarks-indiana-credit-union-league (last visited Apr. 25, 2024).

7

## VI.  The district court correctly denied Space Coast's motion to compel arbitration.

Over 6 weeks after the filing of the complaint, on July 24, 2023, Space Coast came into compliance with AAA's policies, and AAA informed Space Coast that its arbitration clause was registered. Doc. 38-4. AAA's letter said nothing about the arbitration AAA previously had declined. *Id.*

On August 14, 2023, even though AAA had declined to administer arbitration due to Space Coast's failure to comply with AAA Rules and had informed the parties that "either party may choose to submit its dispute to the appropriate court for resolution," Space Coast moved to compel arbitration. Doc. 24.

After full briefing, Docs. 24, 37, 46, the district court, relying in part on its own prior decision in similar circumstances in *Bedgood v. Wyndham Vacation Resorts, Inc.* (*Bedgood I*), 595 F. Supp. 3d 1195 (M.D. Fla. 2022), denied the motion to compel arbitration. *Merritt Island Woodwerx, LLC v. Space Coast Credit Union*, No. 6:23-cv-1066-PGB-DCI, 2023 WL 8699470, at *8 (M.D. Fla. Dec. 15, 2023), Doc. 49. The district court accepted AAA's conclusion that Space Coast had defaulted by failing to comply with AAA's policies and pointed to AAA's

8

letter declining to administer any arbitration between Space Coast and its customers. *Id.* at *3. The district court found absolutely no factual basis for Space Coast's "bald[ ] claim[ ]" that AAA's declination was improper or in error and, in response to Space Coast's attacks on the AAA, cautioned Space Coast that its "[r]ecklessly false assertions of impropriety risk running afoul of Federal Rule of Civil Procedure 11 and the Court strongly advises Space Coast to exercise greater caution in future proceedings." *Id.* at *7 n.4.

As the district court explained: "Having written the terms of the Arbitration Agreement, Space Coast cannot credibly claim it was unfamiliar with the AAA's requirements." *Id.* at *7. The Court noted that "Space Coast failed to take the steps necessary for arbitration to be had by failing to submit the Arbitration Agreement for pre-dispute review and pay the associated fee," and that Space Coast had not done so even after receiving the arbitration demand from Plaintiffs. *Id.*

The district court also rejected Space Coast's arguments that there was any conflict between Space Coast's Arbitration Agreement and AAA's Rules, noting that "Space Coast's attempt to invent a conflict is unconvincing." *Id.* at *6. The district court then cited numerous cases

holding that "general promises to exclusively arbitrate disputes will not prevent a party from bringing their dispute in court when the opposing party fails to comply with the forum's policies." *Id.* (collecting cases).

The district court likewise rejected Space Coast's argument that AAA was "unavailable" and that a different arbitrator should have been appointed. *Id.* at *7. First, the district court held that, "[i]n reality, the AAA was available to arbitrate disputes," but for Space Coast's default in failing to comply with AAA's rules. *Id.* Second, the district court held that, even if AAA was "unavailable," the terms of the Arbitration Agreement provide that in case of unavailability *Plaintiffs* "can select the forum for resolution of the claims," and therefore *Plaintiffs* had the contractual right to select the district court as the forum for the parties' dispute. *Id.*

The district court concluded its analysis by holding that Space Coast had waived any right to arbitration by acting inconsistently with any right to arbitrate by failing to timely take the steps necessary to comply with AAA's policies. *Id.* at *7–8.

10

## SUMMARY OF THE ARGUMENT

This case is governed by *Bedgood II*, 88 F.4th 1355. In *Bedgood II*, this Court affirmed this same district judge's order denying a motion to compel arbitration where AAA declined to administer an arbitration filed by one of the plaintiffs because certain defendants failed to comply with AAA's policies. This Court also affirmed denial of the motion to compel arbitration as to plaintiffs who had not initiated arbitration where, as here, those parties could rely on AAA's statement that it would not administer any arbitration between the business and its customers at the relevant time.

The district court properly rejected each argument Space Coast raises in its attempt to avoid *Bedgood II*. And to the extent that Space Coast attempts for the first time on appeal to introduce new arguments and wholly new "evidence," its attempt is both improper and fails to overcome that, under *Bedgood II*, the district court properly denied the motion to compel arbitration. This Court should affirm.

## STANDARD OF REVIEW

Review of an order denying a motion to compel arbitration is *de novo*, *Jones v. Waffle House, Inc.*, 866 F. 3d 1257, 1263 (11th Cir. 2017),

11

but factual findings by the district court are reviewed only for clear error, *Multi-Fin. Secs. Corp. v. King*, 386 F.3d 1364, 1366 (11th Cir. 2004). "[A] court may not devise novel rules to favor arbitration over litigation." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022). And this Court lacks jurisdiction to hear any interlocutory appeal of a failure to appoint a substitute arbitrator. *Bedgood II*, 88 F.4th at 1367–68.

## ARGUMENT

I.  **Under this Court's holding in *Bedgood II*, the Court should affirm the district court's order denying Space Coast's motion to compel arbitration because Space Coast was in default and was not aggrieved by any failure to arbitrate.**

This appeal is easily resolved by a straightforward application of this Court's recent opinion in *Bedgood II*, in which this Court affirmed denial of a motion to compel arbitration by the same district court judge under materially identical facts. In *Bedgood II*, one group of plaintiffs filed a demand for arbitration with AAA against one defendant, referred to as "Resorts." AAA then sent a letter declining to administer the arbitration because Resorts "failed to comply with the AAA's policies" by failing to have registered its clause with AAA. *Id.* at 1359. "In view of Resorts' non-compliance, the AAA 'decline[d] to administer [each purchaser's] claim and any other claims between [Resorts] and its

12

consumers at this time' and thus instructed the purchasers that they could 'submit [their] dispute[s] to the appropriate court for resolution.'" *Id.* (alterations original) (citing letter from AAA).

A class action was then filed in district court on behalf of: (1) the plaintiffs who had originally sought to arbitrate against Resorts only to have AAA decline to administer the arbitration (the "Group 1 Plaintiffs"); (2) plaintiffs who never formally submitted their claims against Resorts to AAA, but whose agreements with Resorts contained identical arbitration provisions (the "Group 2 Plaintiffs"); and (3) plaintiffs who had an agreement with a different, non-Resorts defendant (the "Group 3 Plaintiffs"). *Id.* The district court denied the motion to compel as to all three groups. *Bedgood I*, 595 F. Supp. 3d 1195.

On appeal, this Court affirmed that denial as to the Group 1 and Group 2 Plaintiffs—plaintiffs who had sought arbitration and been declined by AAA and plaintiffs with arbitration agreements with Resorts that were materially identical to the agreements AAA had declined to administer. *Bedgood II*, 88 F.4th at 1359.

Specifically, this Court affirmed that "Resorts' failure to comply with the rules of its chosen arbitral forum renders the remedies specified in Sections 3 and 4 of the FAA unavailable to it," namely the remedies of an order staying litigation and compelling arbitration. *Id.* at 1362. Therefore, this Court held that the plaintiffs "may proceed to litigation." *Id.*

In explaining its reasoning, this Court held that AAA's "Rules make clear that the determination whether a party has complied with the AAA's policies is an administrative decision that can and should be made by the AAA." *Id.* at 1364. The Court determined that "the AAA administrator was within its prerogative to determine that [defendant] was out of compliance with [AAA's] policies." *Id.* The Court specifically rejected Resorts' argument that AAA was not permitted to give a general conclusion and that AAA needed to provide specificity. *Id.* at 1365. And this Court affirmed that "[t]he district court's ensuing reliance on that determination to conclude that Resorts was 'in default' with the forum was not improper." *Id.* As, such, this Court affirmed the district court's conclusion that Resorts was "in default" and therefore not entitled to relief under Section 3 of the FAA.

14

Similarly, this Court affirmed that Resorts was not "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate," as is required for relief under Section 4 of the FAA. *Id.* at 1366. The Court reached this conclusion because (1) the Group 1 Plaintiffs had not "failed, neglected or refused" to arbitrate, but had instead filed for arbitration only to have AAA decline administration because of Resorts' failure to follow AAA policy; and (2) Resorts was not "a party aggrieved" by the Group 2 Plaintiffs because it would have been futile for them to seek arbitration when AAA's declination letter indicated that AAA was declining to administer arbitration of the Group 1 Plaintiffs' claims "and any other claims between [Resorts] and its consumers at this time." *Id.* at 1367. As this Court explained, "To the extent that Resorts is aggrieved, it was aggrieved either by its own failure to bring its arbitration clause into compliance with AAA policies or, at the very least, by the AAA's decision to that effect, not the Group (2) plaintiffs' conduct." *Id.*

Finally, this Court concluded that it lacked jurisdiction to hear any appeal that the district court had erred in refusing to appoint a substitute, non-AAA arbitrator under Section 5 of the FAA. *Id.* The

Court held that "[t]he FAA 'carves out exceptions to the general rule allowing review of some'—but, importantly, not all—'interlocutory orders,'" and that only decisions under Sections 3 and 4 were reviewable on interlocutory appeal, but *not* decisions regarding appointment of a substitute arbitrator under Section 5. *Id.*

*Bedgood II* applies here. In this case, as in *Bedgood II*, Space Coast failed to comply with AAA's policies—as determined by the AAA itself. AAA Declination Letter, Doc. 38-3. As this Court explained in *Bedgood II*, AAA's "Rules make clear that the determination whether a party has complied with the AAA's policies is an administrative decision that can and should be made by the AAA." *Bedgood II*, 88 F.4th at 1364. AAA's Rules expressly informed Space Coast that if Space Coast failed to give notice to AAA and provide its clause within 30 days before implementation, "the [AAA] reserves the right to withhold its administrative services," AAA Notification Provision, Doc. 38-1 at 9, and that "[s]hould the AAA decline to administer an arbitration, either party may choose to submit its dispute to the appropriate court for resolution," Doc. 38-1 at 11, Rule 1(d).

16

Here, AAA determined that "[p]rior to the filing of this arbitration, Space Coast Credit Union failed to comply with the AAA's policies regarding consumer claims." Doc. 38-3. Pursuant to the power it reserved for such situations, AAA "decline[d] to administer this claim and any other claims between Space Coast Credit Union and its consumers at this time." *Id.* Like Resorts in *Bedgood II*, here, Space Coast's "failure to comply with the rules of its chosen arbitral forum renders the remedies specified in Sections 3 and 4 of the FAA unavailable to it." 88 F.4th at 1362. And "[t]he district court's ensuing reliance on that [AAA] determination to conclude that [Space Coast] was 'in default' with the forum was not improper." *Id.* at 1364. A party "in default," such as Space Coast, cannot obtain relief under Section 3 of the FAA. *Id.*

Similarly, like Resorts in *Bedgood II*, here, Space Coast cannot show that the two prerequisites required for relief under Section 4 of the FAA are met. As in *Bedgood II*, Space Coast is not a party aggrieved by another's failure, neglect, or refusal to arbitrate. That is because, as in *Bedgood II*, Woodwerx did not fail, neglect, or refuse to arbitrate—it filed for arbitration at AAA, only to have AAA decline to administer the

17

arbitration due to Space Coast's failures to comply with AAA's policies. Likewise, as in *Bedgood II*, Space Coast is not "a party aggrieved" by True Touch because AAA stated that it would refuse to arbitrate, not just Woodwerx's claims, but "any other claims between Space Coast Credit Union and its consumers at this time." Doc. 38-3. Like in *Bedgood II*, "[t]o the extent that [Space Coast] is aggrieved, it was aggrieved either by its own failure to bring its arbitration clause into compliance with AAA policies or, at the very least, by the AAA's decision to that effect, not the [Woodwerx and True Touch] plaintiffs' conduct." 88 F.4th at 1367.

Finally, like in *Bedgood II*, this Court lacks appellate jurisdiction to consider any argument by Space Coast that the district court erred by not appointing a substitute arbitrator under Section 5 of the FAA. Moreover, as set forth below, this is not a circumstance in which appointing a substitute arbitrator is required.

In short, under a straightforward application of *Bedgood II*, this Court should affirm the district court.

18

## II.    Each of Space Coast's attempts to avoid application of *Bedgood II* fail.

Much of Space Coast's Opening Brief is little more than a request for the Court to overturn or disregard *Bedgood II*. But "[u]nder [the Eleventh Circuit's] prior precedent rule, a panel cannot overrule a prior one's holding even [if] convinced it is wrong." *Andrews v. Biggers*, 996 F.3d 1235, 1236 (11th Cir. 2021) (quoting *United States v. Steele*, 147 F.3d 1316, 1317–18 (11th Cir. 1998) (en banc)). In other words, "the holding of the first panel to address an issue is the law of [the Eleventh] Circuit, thereby binding all subsequent panels unless and until the first panel's holding is overruled by the Court sitting *en banc* or by the Supreme Court." *Smith v. GTE Corp.*, 236 F.3d 1292, 1300 n.8 (11th Cir. 2001).

Here, *Bedgood II* controls. And to the extent that Space Coast tries to distinguish *Bedgood II*, its efforts go nowhere.

### A.    AAA was not "unavailable" and, even if it was, AAA's unavailability gave Plaintiffs the right under the Arbitration Agreement to choose the district court as the forum for dispute resolution.

First, Space Coast attempts to distinguish *Bedgood II* by arguing that unlike in *Bedgood II*, here, Space Coast's Arbitration Agreement contains an "unavailability clause." Opening Br. 4, 13, 23–24, 29–31.

19

But the district court properly held that (1) the unavailability clause does not apply because AAA was available but for Space Coast's default in failing to comply with AAA's policies; and (2) even if the unavailability clause applied, its terms gave Plaintiffs the right to choose any forum they wished, including the district court, where Plaintiffs filed suit.

The "unavailability clause" provides in relevant part:

> If AAA is unavailable to resolve the Claims, and if you and we do not agree on a substitute forum, then you can select the forum for the resolution of the Claims.

Doc. 25-8 at 8 § 37(a). The district court's rejection of Space Coast's argument on this point on two grounds cannot be any clearer. As the district court correctly explained:

> Space Coast is also under the impression its noncompliance only made the AAA "unavailable" as a forum, rather than constituted a default. (Doc. 24, p. 15; Doc. 46, p. 3). If the AAA is "unavailable" to resolve the claims, "and if [Plaintiffs] and [Space Coast] do not agree on a substitute forum, then [Plaintiffs] can select the forum for the resolution of the claims," according to the Arbitration Agreement. (Doc. 8-1, § 37(a)). Space Coast contends the provision allows Plaintiffs to choose a substitute *arbitral* forum only. (Doc. 24, p. 15; Doc. 46, p. 3). On the other hand, Plaintiffs assert the unavailability provision allows them to choose *any* substitute forum, including a court. (Doc. 37, pp. 12–13).

> In reality, the AAA was available to arbitrate disputes. As Plaintiffs note, this Court previously held that an arbitral forum is unavailable "when it no longer exists or does not even handle private arbitrations," not "for merely refusing to arbitrate an agreement," as the AAA did here. *Bedgood*, 595 F. Supp. 3d at 1202 n.12. But even assuming the AAA were unavailable, Space Coast's contract interpretation would not prevail. Under Florida law, a contract provision is ambiguous where it is susceptible to more than one rational interpretation and any ambiguity must be construed against the drafter. *City of Homestead v. Johnson*, 760 So. 2d 80, 84 (Fla. 2000). As demonstrated by the parties' arguments, the unavailability provision is susceptible to two different rational interpretations—with the general promise to arbitrate supporting Space Coast's view, and the "essential term" that the AAA administer it supporting Plaintiffs' view—and Space Coast drafted it, so Plaintiffs' reading would win out.

*Merritt Island Woodwerx*, 2023 WL 8699470, at *7 (emphasis in original). Thus, the district court correctly found the "unavailability clause" inapplicable, but also that applying it would favor Plaintiffs, not Space Coast.

The district court's interpretation also makes sense—no party would reasonably expect that the other party could in good faith take advantage of an unavailability clause by *causing* the unavailability of the AAA through failing to comply with AAA policies incorporated into the parties' agreement. And by incorporating the AAA's Rule 1(d) and 12, which provides that *even though the AAA is available to arbitrate a*

*dispute it may decline to do so*, the parties specifically contemplated circumstances in which the failure to comply with AAA's Rules could lead to access to court. Space Coast's alternative interpretation impermissibly ignores all of the contract provisions and inexplicably would reward a defaulting party.

That is why numerous courts hold that "general promises to exclusively arbitrate disputes will not prevent a party from bringing their dispute in court when the opposing party fails to comply with the forum's policies." *Merritt Island Woodwerx*, 2023 WL 8699470, at *6 (collecting cases).

And, as the district court correctly held, to the extent the unavailability clause applies, and it does not, it requires affirming the district court as the unavailability of AAA would nonetheless leave Plaintiffs to choose any "forum" for dispute resolution, not limited to arbitration. *See Forum*, Merriam-Webster.com Dictionary, https://www.merriam-webster.com/dictionary/forum (defining "forum" as "a judicial body or assembly: COURT") (last visited Apr. 26, 2024).

In addition, Space Coast's citation to cases involving whether the choice of a particular arbitral forum is "integral" to an agreement to

arbitrate misses the point. Opening Br. 31. The issue is not whether any particular arbitral forum is integral, but whether—as AAA and the district court held—Space Coast was in default by failing to take the steps required to ensure arbitration would be had under the parties' agreement.

Moreover, to the extent Space Coast argues that the district court erred in not appointing a substitute arbitrator under the "unavailability clause," this Court held in *Bedgood II* that there is no appellate jurisdiction to review such a decision on an interlocutory basis, such as here. 88 F.4th at 1367–68 (holding there was no jurisdiction and noting that "[w]e needn't resolve the Section 5 issue to reject Resorts' contentions with respect to Sections 3 and 4, both of which are resolvable by reference to statutory language and the AAA Consumer Arbitration Rules alone").

**B.    Space Coast's attempts to portray its own default as a "clerical error," "mistake," and "AAA's error" are unsupported by the record and the law.**

Second, Space Coast attempts to argue that it did not "default" under *Bedgood II* by failing to follow AAA's policies. Instead, Space Coast mischaracterizes AAA's decision to decline arbitration as "AAA's

23

error," a "clerical error," or a "mistake," Opening Br. 1, 5, 43–49, rather than what it was: a finding that Space Coast defaulted by "failing to comply with the AAA's policies regarding consumer claims," Doc. 38-3 at 2. In Space Coast's reimagining, Space Coast was entitled to sit on its hands for over three years and *not* register its Arbitration Agreement with AAA—never mind that AAA's Rules clearly informed Space Coast that, by failing to notify AAA 30 days *before* implementing its Arbitration Agreement, AAA could choose to "withhold its administrative services," AAA Notification Provision, Doc. 38-1 at 9, and that then customers could "submit its dispute to the appropriate court for resolution," *id.* at 11, Rule 1(d). The problem with Space Coast's attempt to transmute *its* default into *AAA*'s error is that it is inconsistent with the record and the law.

Indeed, the district court scolded Space Coast for its "bald[ ]" and wholly unsupported argument that AAA improperly declined arbitration in this case. As the district court stated:

> Nothing about the AAA's declination was "improper[ ]" as Space Coast baldly claims. (Doc. 24, p. 2; Doc. 46, p. 5). As drafter of the Arbitration Agreement, Space Coast should be very familiar with a decade-old AAA rule that it incorporated into the contract regarding preconditions for administering arbitration. It admits it did not abide by the rule, and the AAA

24

could not be clearer that it will not administer arbitrations for those businesses that do not abide by the rule policies and pay their annual fees. . . . *Recklessly false assertions of impropriety risk running afoul of Federal Rule of Civil Procedure 11 and the Court strongly advises Space Coast to exercise greater caution in future proceedings.*

*Merritt Island Woodwerx*, 2023 WL 8699470, at *7 n.4 (emphasis added).

But rather than heed the district court's advisement, on appeal, Space Coast doubles down and goes further by making unsupported arguments it never made below and by attempting to inject new and unauthenticated evidence and other matters outside the record, all in support of its flawed argument. Across pages of its Opening Brief, Space Coast argues for the first time on appeal, and without any record support, that "[m]any businesses overlook the AAA's" notice requirement and that "[t]ypically, if a provision is not registered prior to the filing of an arbitration demand, the AAA will send a letter informing the business" and "[t]he business is then ordinarily given a deadline by which to complete submission and payment." Opening Br. 10–13. Space Coast then, for first time on appeal, tries to introduce, through a hyperlinked webpage, an unauthenticated letter from 2021 that it claims, without evidence, is "an example of the form letter sent

25

to entities that haven't pre-registered their clauses." Opening Br. 12
n.4. Of course, all of this is highly inappropriate on appeal, and none of
these arguments were before the district court.[1] Likewise, there is no
evidence in the record for Space Coast's lawyers' arguments (made for
the first time on appeal) that it was Space Coast's "reasonable
understanding" that it could wait for over three years to notify the AAA
or to attempt to register its clause and pay the required fees and that
Space Coast was "shocked" when AAA declined to arbitrate the
agreement that went unregistered in violation of AAA policy for over
three years. Space Coast also fails to identify any evidence in the record
explaining how it was reasonable for Space Coast to understand it could
continue its violation of AAA's notification and registration
requirements *even after* it received Woodwerx's demand for arbitration.

But, even worse for Space Coast, none of its new conjecture
refutes the evidence that *is* in the record and that shows Space Coast
defaulted under *Bedgood II*. There is no getting around that on page 8

---

[1] Space Coast's inclusion of a screenshot that is not in the record
purportedly from a website that is not in the record, Opening Br. 15–16,
all of which are without authentication, is likewise impermissible and
inappropriate on appeal. At the very least, the Court should disregard
such violations of the appellate rules.

of AAA's Rules, AAA informed Space Coast that, if Space Coast failed to give AAA notice regarding its Arbitration Agreement 30 days before its implementation, AAA retained "the right to withhold its administrative services," which is exactly what AAA chose to do. AAA Notification Provision, Doc. 38-3 at 9. Space Coast *chose* to incorporate AAA's Rules into its Arbitration Agreement and as a matter of law Space Coast has knowledge of the terms of its own contract. *Allied Van Lines, Inc. v. Bratton*, 351 So.2d 344, 347–48 (Fla. 1977). Whether the standard is intentional conduct or negligence does not matter—the undisputed evidence is that Space Coast knowingly and intentionally chose *not* to provide the pre-implementation notice required to AAA to ensure AAA would administer any arbitration. In other words, Space Coast knowingly took the very risk that materialized—that by failing to notify AAA at least 30 days before implementing its Arbitration Agreement, AAA might decline to administer the clause for failure to follow its policies and that in such a case customers could seek a remedy in court. Failing to comply with AAA's policies is exactly the conduct that this Court held constituted default in *Bedgood II*, and it does not matter whether the failure was to register a non-compliant clause or to fail to

27

give the required notice under the AAA Notification Provision—AAA
rightfully found non-compliance and that non-compliance is contrary to
and impeded any right to arbitration. The Court should treat the
Arbitration Agreement, incorporating AAA's Rules, just as it would any
other agreement—Space Coast failed to comply with AAA's policies
when it failed to register its clause knowing that doing so permitted
AAA to decline to arbitrate under the express power reserved in the
AAA Notification Provision. Doc. 38-3 at 9.

Worse yet for Space Coast, under *Bedgood II*, it is *AAA* who had
the power to decide whether Space Coast had complied with AAA's
policies, and it is undisputed that AAA concluded that Space Coast had
*not* complied. *Bedgood II* holds that the AAA's "Rules make clear that
the determination whether a party has complied with the AAA's policies
is an administrative decision that can and should be made by the AAA."
88 F.4th at 1364. It is "the AAA administrator" who is "within its
prerogative to determine that [Space Coast] was out of compliance with
[AAA's] policies." *Id.* Under *Bedgood II*, no level of specificity was
required from the AAA. *Id.* at 1365. And, as in *Bedgood II*, "[t]he
district court's ensuing reliance on that determination to conclude that

28

[Space Coast] was 'in default' with the forum was not improper," particularly where Space Coast admitted that it had not notified AAA within 30 days of implementing its Arbitration Agreement. *Id.*

The AAA Administrator was within its authority to decline to administer the arbitration for failure to notify AAA, without any requirement to allow belated registration.[2] Moreover, not only was AAA permitted to decline the arbitration, Space Coast has failed to even develop a record of its post-denial actions. The evidence shows that Space Coast took *no action* in the face of Woodwerx's arbitration demand. Doc. 26 at 2, ¶¶ 3-4. While Space Coast says it emailed AAA five days *after* receiving the AAA Declination Letter indicating that it would like to proceed with arbitration, *id.* at 3, ¶ 5, Space Coast has not provided that email nor any other evidence indicating Space Coast attempted to register its Arbitration Agreement at that time. Nor has

---

[2] It makes no difference whether AAA may have exercised discretion in other cases to excuse non-compliant conduct by other parties, as Space Coast insinuates for the first time on appeal, with no record evidence. There is no evidence that Space Coast was aware of any such conduct, and, regardless, the fact remains that AAA retained the right to decline administration for non-compliance, and that by failing to comply with AAA's policies Space Coast was taking a knowing risk that AAA might decline to administer the arbitration and that the customer could then proceed in court.

29

Space Coast provided any other evidence regarding its attempt to later register or the dates when those efforts were made. All the record reflects is that on June 9, 2023—two days *after* Plaintiffs had filed their complaint in the district court, over a month after AAA sent the Declination Letter, and over two months after Woodwerx had first demanded arbitration, Space Coast contacted AAA about registering its clause, which registration was completed on July 24, 2023. Doc. 26 at 3, ¶¶ 6–7. Thus, Space Coast remained in default for quite some time— over three years from when it originally implemented the Arbitration Agreement, and several months after Woodwerx attempted to initiate arbitration. That Space Coast eventually later registered its clause does not overcome its default. *Thomas N. Carlton Estate v. Keller*, 52 So. 2d 131, 133 (Fla. 1951) ("When a party waives a right under a contract he cannot, without the consent of his adversary, reclaim it."). The district court did not err in holding that Space Coast was in default and therefore not entitled to relief. As in *Bedgood II*, the district court was not bound by AAA's conclusion, but it also was not error to rely upon it.

30

**C.    Space Coast's description of *Bedgood II* as it relates to True Touch misrepresents that case's application to parties who have a materially identical arbitration clause with a party for whom AAA has declined to arbitrate due to a failure to comply with AAA's policies.**

Finally, inexplicably, Space Coast argues that *Bedgood II* does not apply to True Touch because only Woodwerx attempted to initiate arbitration against Space Coast with AAA and was declined, while True Touch relied on AAA's letter to Woodwerx as meaning it was futile to file for arbitration with AAA and so filing in court was permitted. But this is *exactly* what *Bedgood II* held was proper.

Here, the district court held that True Touch could rely on the futility of demanding arbitration against Space Coast at AAA because AAA's letter to Woodwerx stated AAA would "decline to administer [Woodwerx's] claim *and any other claims between Space Coast Credit Union and its consumers at this time*." AAA Declination Letter, Doc. 38-3.

In its Opening Brief, Space Coast wrongly argues that "This Court's decision in *Bedgood II* did not adopt—and, in fact, is inconsistent with—the district court's 'futility' theory." Opening Br. 53. Space Coast then proceeds to analogize True Touch to the *wrong* group

31

of plaintiffs in *Bedgood II*, plaintiffs who sued a *different defendant* against whom AAA had never declined to arbitrate.

To unscramble, Space Coast's flawed explanation of *Bedgood II*: as discussed above, in *Bedgood II* there were three different groups of plaintiffs: (1) Group 1 Plaintiffs had demanded arbitration against Resorts, which AAA declined to administer, and then sued in court—those plaintiffs are analogous here to Woodwerx; (2) Group 2 Plaintiffs had *not* demanded arbitration at AAA but sued Resorts in court under a futility theory because their arbitration clauses *with Resorts* were materially identical to the Group 1 Plaintiffs for whom AAA had declined to arbitrate *against Resorts*—those plaintiffs are analogous here to True Touch; and (3) Group 3 Plaintiffs did *not sue Resorts at all but who sued a different defendant* for whom AAA had never declined arbitration—none of the Plaintiffs here are like this group.

Space Coast falsely portrays True Touch as being similar to a Group 3 Plaintiff, but it is clearly analogous to the Group 2 Plaintiffs in *Bedgood II*. As in *Bedgood II*, True Touch sued *the same defendant (Space Coast) as Woodwerx* under *the same Arbitration Agreement* and based on the AAA's statement that it would decline to administer "this

32

claim *and any other claims* between Space Coast Credit Union and its consumers" under the unregistered clause. Doc. 38-3. And this Court held in *Bedgood II* that a person in True Touch's position could rely on the futility of suing the same defendant for whom AAA had declined arbitration. True Touch here is *not* suing a different defendant than Woodwerx, which was the case for the Group 3 Plaintiffs in *Bedgood II*.

Space Coast's argument that True Touch had to show some intent to arbitrate before suing in court, and that that intent was made futile by learning of AAA's denial as to Woodwerx, is bewildering. Opening Br. 51–52. True Touch specifically pled in its complaint against Space Coast on June 7, 2023, that Woodwerx had demanded arbitration and that AAA had declined to arbitrate because of Space Coast's failure to comply with AAA's policies, necessitating the filing of the complaint in the district court. Doc. 1. True Touch even attached the AAA Declination Letter. Doc. 1-6; Doc. 8-3. The undisputed evidence shows that Space Coast's arbitration clause remained unregistered for more than a month after the complaint was filed. *See* Doc. 38-4.

And contrary to Space Coast's argument, there is no record evidence that AAA would have arbitrated any claims by consumers

before July 24, 2023, when it sent the letter informing Space Coast that it had accepted its clause for registration. *Id.* To the contrary, the evidence in the record indicates that AAA would decline to arbitrate "*any* other claims between Space Coast Credit Union and its consumers" unless "*[p]rior to the filing of th[e] arbitration*, Space Coast . . . compl[ied] with the AAA's policies regarding consumer claims." Doc. 38-3 (emphasis added). The screenshot that Space Coast improperly includes on page 16 of its brief is unauthenticated as to what it actually represents, and it was *never* submitted or argued to the district court. Simply put, True Touch here is in the exact same position as the Group 2 Plaintiffs in *Bedgood II* and therefore, as in *Bedgood II*, the district court properly denied the motion to compel True Touch to arbitration given the circumstances.

## CONCLUSION

Under *Bedgood II*, the Court should affirm the district court's order denying Space Coast's Motion to Compel Arbitration.

Dated: April 26, 2024

Respectfully submitted,

/s/ Vess A. Miller

J. Gerard Stranch, IV
STRANCH, JENNINGS & GARVEY,
PLLC
223 Rosa L. Parks Ave., Suite 200
Nashville, TN 37203
(615) 254-8801
gstranch@stranchlaw.com

Lynn A. Toops
Vess A. Miller
COHEN & MALAD, LLP
1 Indiana Square, Suite 1400
Indianapolis, IN 46204
(317) 636-6481
ltoops@cohenandmalad.com
vmiller@cohenandmalad.com

Jacob Phillips
JACOBSON PHILLIPS PLLC
478 E. Altamonte Dr, Ste 108-570
Altamonte Springs, FL 3701
(407) 720-4057
jacob@jacobsonphillips.com

*Counsel for All Plaintiffs-Appellees*

35

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with Fed. R. App. P. 32(a)(7) because it contains 7,953 words. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it was prepared in Microsoft 365 Word version 2403 using a proportionally spaced typeface (Century Schoolbook) in 14-point font.

Date:       April 26, 2024                  /s/Vess A. Miller
                                            Vess A. Miller

**CERTIFICATE OF SERVICE**

I certify that on April 26, 2024, I electronically filed the foregoing with the Clerk of the Court of the United States Court of Appeals for the Eleventh Circuit by using the appellate CM/ECF system, which will send a notice of electronic filing to all parties appearing in this matter.

Date:    April 26, 2024        /s/Vess A. Miller
                                     Vess A. Miller